GREGG B. MARSH, Adm'r of the Estate of Susan Lynn Marsh, Deceased, and Gregg B. Marsh, Indiv., Plaintiff-Appellee, v. LAKE FOREST HOSPITAL *et al.*, Defendants (Marc F. Benjoya, Contemnor-Appellant).

Second District No. 2—87—0513

Opinion filed February 9, 1988.

John D. Cassiday, Michael J. Gallagher, Michael G. Thomas, and Dennis A. Ferraro, all of Cassiday, Schade & Gloor, of Chicago, for appellant.

Patrick A. Salvi, of Law Offices of Patrick A. Salvi, of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The circuit court of Lake County found attorney Marc F. Benjoya

in contempt of court for failing to comply with the court's discovery order requiring production of the results of certain polygraph tests. Benjoya appeals, contending that the discovery order was improper because (1) polygraph evidence is not discoverable; (2) the information is privileged pursuant to sections 8—2101 through 8—2105 of the Code of Civil Procedure (the Medical Records Act) (Ill. Rev. Stat. 1985, ch. 110, pars. 8—2101 through 8—2105); and (3) the material is covered by the attorney-client privilege.

Gregg B. Marsh, in his individual capacity and as administrator of the estate of Susan Marsh, filed suit against Lake Forest Hospital (hospital) and other defendants alleging medical malpractice in the death of Susan Marsh.

Susan Marsh died while a patient at the hospital on September 23, 1984. During the course of discovery, it became apparent that her medical records had been altered by someone at the hospital subsequent to that date. Plaintiff's counsel discovered the alteration at a discovery deposition on September 11, 1986. Counsel for the hospital relayed this information to the hospital president and its vice-president for nursing. Counsel recommended that the hospital give polygraph tests to the nurses who attended Susan Marsh on September 22, 1984, before she suffered a fatal heart attack. According to the contemnor's brief, "the tests were administered for the purpose of internal quality control, reducing morbidity and mortality, and for improving overall patient care. It was never contemplated that the results of the test would, or could, be used in defense of the allegations of the pending complaint brought by Gregg Marsh. But the hospital absolutely must know if a nurse employed to care for its patients is changing patients' records to make the care appear different than it was."

On April 3, 1987, the court ordered production of all lie detector test results and all documents arising out of the taking of those tests. The court also required the hospital to name the polygraph examiner, as well as all persons who were subjected to the test. The hospital's counsel did not produce the records. Plaintiff then filed a petition for a rule to show cause why defendant and its attorneys should not be held in contempt for failure to comply with the court's April 3 discovery order. On May 15, 1987, the court found Benjoya, one of the hospital attorneys, in contempt for failure to produce the documents and fined him $25. Benjoya appeals, contending that the material was not discoverable for the reasons previously noted.

■ Initially, plaintiff has filed a motion in this court to strike the portion of appellant's brief quoted above, wherein appellant asserts the reason for the taking of the polygraph exams. We ordered the motion

taken with the case. Plaintiff's motion alleges that the quoted language, while appearing in the fact statement, consists solely of argument, in violation of Supreme Court Rule 341(e)(6) (107 Ill. 2d R. 341(e)(6)). The last quoted sentence, while stated in an argumentative manner, merely states the obvious: that the hospital would be interested in knowing whether members of its nursing staff were altering patient records. The rest of the information is contained in the affidavit of counsel included in the record and is allegedly based on his personal knowledge. However, to the extent that the quoted language contains conclusions of counsel, we will disregard it.

We proceed now to the merits of the issues raised by Benjoya. He argues first that polygraph evidence is inherently unreliable, and for that reason has been held to be inadmissible at any phase of trial. Therefore, he contends, such evidence is not discoverable. Plaintiff concedes that such evidence would be inadmissible at trial, but points out that the scope of discovery is not restricted to admissible evidence.

■ The Illinois Supreme Court has repeatedly held that polygraph evidence is inherently unreliable and prejudicial and is therefore inadmissible at trial. This is so whether the evidence is sought to be used at an administrative hearing (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 309, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391), at a hearing on a post-trial motion (*People v. Yarbrough* (1982), 93 Ill. 2d 421, 426-27, 444 N.E.2d 493), or even at the death penalty phase of a capital trial where the evidence is favorable to the defendant (*People v. Szabo* (1983), 94 Ill. 2d 327, 362, 447 N.E.2d 193). Such evidence may not be used even though the parties have stipulated to its admissibility. (*People v. Baynes* (1981), 88 Ill. 2d 225, 240, 430 N.E.2d 1070.) This does not mean, however, that polygraph results may never be used for any purpose.

In *Kaske*, the court held that such evidence "is not reliable enough to be used as *substantive evidence* in an administrative proceeding." (Emphasis added.) (*Kaske*, 96 Ill. 2d at 309.) The dissent, however, noted that the tests may still serve some purpose: " 'Such tests are recognized as having some value in investigation, even though they are not yet sufficiently reliable to be admitted in evidence.' " (*Kaske*, 96 Ill. 2d at 312-13 (Moran, J., dissenting), quoting *McCain v. Sheridan* (1958), 160 Cal. App. 2d 174, 177, 324 P.2d 923, 926.) In *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350, the court held that the State was required to keep a deal made with the defendant whereby the State would drop all charges if the defendant passed a lie detector test. (*Starks*, 106 Ill. 2d at 448-49.) While this is a far cry from endorsing polygraph results, these cases represent a recognition by the su-

preme court that polygraph results may be useful for some purposes other than as evidence at trial.

Further, as plaintiff notes, the scope of discovery is not restricted to admissible evidence, but includes that which leads to admissible evidence. (*Snyder v. Lowrey* (1986), 141 Ill. App. 3d 30, 32, 489 N.E.2d 899.) Great latitude is allowed in the scope of discovery. (See 107 Ill. 2d R. 201(b).) The trial court has broad discretion in ruling on discovery matters, and its ruling will be overturned on appeal only when an abuse of discretion is clearly shown by the appellant. *Snyder*, 141 Ill. App. 3d at 32-33.

In the instant case, Benjoya does not argue that the requested material is irrelevant to plaintiff's cause of action, that producing it would be unduly burdensome, or that plaintiff could obtain the same information by some other means. He cites no authority for the proposition that such material is not discoverable. Given the broad discretion normally afforded the trial court in discovery matters and the broad scope of discovery in general, we cannot say that the court abused its discretion in ordering production of the polygraph results.

Benjoya further contends, however, that the material sought by plaintiff is privileged pursuant to the Medical Records Act (Act). (Ill. Rev. Stat. 1985, ch. 110, par. 8—2101 *et seq*.) That statute provides in relevant part:

> "All information, interviews, reports, statements, memoranda or other data of *** committees of licensed or accredited hospitals or their medical staffs *** (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." (Ill. Rev. Stat. 1985, ch. 110, par. 8—2101.)

Section 8—2102 of the Act provides that such material shall not be discoverable, nor admissible in evidence, in any action. (Ill. Rev. Stat. 1985, ch. 110, par. 8—2102.) Section 8—2105 makes the disclosure of such information a Class A misdemeanor. Ill. Rev. Stat. 1985, ch. 110, par. 8—2105.

Plaintiff initially responds that the contemnor has waived this is-

sue by failure to cite authority in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)). A statute may constitute authority, and contemnor cites these statutes. Contemnor concedes that no case has previously approved or rejected application of the Act to the precise circumstances presented here. We note that plaintiff has not cited any cases presenting a similar factual situation to the present case, and our research has not revealed any. Since the issue is one of first impression, contemnor has not waived it by failing to cite relevant case law.

Courts have held that the purpose of the Act is to insure the effectiveness of professional self-evaluation in the interest of improving the quality of health care. It is premised on the theory that, in the absence of such confidentiality, doctors will be reluctant to sit on peer-review committees. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 479-80, 468 N.E.2d 1162; *Gleason v. St. Elizabeth Medical Center* (1985), 135 Ill. App. 3d 92, 95, 481 N.E.2d 780.) Thus, in the typical case, the statute bars disclosure of documents compiled in the course of granting, restricting, or suspending a doctor's staff privileges. (See, *e.g.*, *Mennes v. South Chicago Community Hospital* (1981), 100 Ill. App. 3d 1029, 1031, 427 N.E.2d 952.) However, no court has held that promoting peer review is the *only* purpose of the Act. (See *Andrews v. Eli Lilly & Co.* (N.D. Ill. 1983), 97 F.R.D. 494, 500 n.19.) Thus, the privilege contained in the Act has been applied to proceedings of the Joint Commission on Accreditation of Hospitals, although the commission is not specifically mentioned in the Act as an entity to which the privilege applies (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937), and to the data compiled by a doctor engaged in important medical research (*Andrews*, 97 F.R.D. at 500).

On the other hand, the Act has been held not to bar disclosure for *in camera* inspection of materials relating to the care of a particular patient (*Walker v. Alton Memorial Hospital Association* (1980), 91 Ill. App. 3d 310, 313-14, 414 N.E.2d 850; see *Mennes*, 100 Ill. App. 3d at 1032), disclosure of materials related to actions taken as a result of the review process, as opposed to the process itself (*Richter v. Diamond* (1985), 108 Ill. 2d 265, 269-70, 483 N.E.2d 1256; *Gleason*, 135 Ill. App. 3d at 95), disclosure of information to a doctor pursuing a defamation action against a fellow physician (*Matviuw v. Johnson* (1979), 70 Ill. App. 3d 481, 487, 388 N.E.2d 795), or disclosure to a doctor prosecuting an antitrust action against the hospital which terminated his staff privileges (*Memorial Hospital for McHenry County v. Shadur* (7th Cir. 1981), 664 F.2d 1058, 1062-63).

Plaintiff argues that the Act does not apply, according to its own

terms, for two reasons. First, the Act is applicable only to "committees of licensed or accredited hospitals or their medical staffs," and nothing in the record suggests that the information in question was collected by a committee of the hospital or members of its medical staff. Indeed, the affidavit of the hospital's counsel states that the tests were administered on behalf of the hospital's "administration." "Administration" is not further defined.

Second, plaintiff asserts that the primary policy served by the Act, shielding the peer-review process, is not advanced by extending the Act to the present situation. The narrow purpose to be served, "to encourage medical facilities to root out incompetent staff members," is not served by extending the privilege. (See Kandarus & Wozniak, *Civil Procedure*, 18 Loy. U. Chi. L.J. 317, 338 (1986).) As contemnor notes, the hospital has a strong interest in discovering the existence and identity of nurses who may be engaged in altering patient records. Nothing in the record suggests that nurses are appointed to or removed from staff positions by a peer-review process, as are doctors. Rather, the record shows that, at least in this instance, the investigation was undertaken by the hospital administration. Given the potential risks involved, it does not seem that the administrators would be deterred from such an investigation simply because the result might subsequently be discoverable in a civil suit against the hospital. If, as the hospital's counsel asserts, the purpose of the lie detector examinations was to provide better patient care, that goal will not be hampered by subsequent disclosure of the results. The purpose of the Act is not to shield the hospital from potential liability. The problem of finding doctors to serve on peer-review committees, noted in *Jenkins*, is not present where the investigation is undertaken by the hospital administration.

Furthermore, it should be borne in mind that the effect of any evidentiary privilege is to bar the discovery of potentially relevant facts, which is inconsistent with the truth-seeking function. Thus, any privilege should be narrowly limited to the extent necessary to achieve its desired purpose. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 118, 432 N.E.2d 250, citing 8 J. Wigmore, *Evidence* §2291, at 554 (rev. ed. 1961).) We conclude that the instant situation is not covered by the plain language of the Medical Records Act, and the policies sought to be served thereby are not advanced by extending the privilege to cover the present situation.

Benjoya makes one final argument against the propriety of the trial court's order, claiming that the material is covered by the attorney-client privilege and citing *Consolidation Coal Co. v. Bucyrus-Erie*

*Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250. In that case, the supreme court adopted the "control group" test for determining the extent of the attorney-client privilege in corporate cases. In extending the control group to include individuals upon whom top-level managers rely for advice or information, the court stated:

> "We believe that an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within the control group. *** Thus, if an employee of the status described is consulted *for the purpose of determining what legal action the corporation will pursue,* his communication is protected from disclosure." (Emphasis added.) (*Consolidation Coal Co.,* 89 Ill. 2d at 120.)

In the instant case, the information for which disclosure is sought was simply not obtained for the purpose of determining what legal action the hospital would take. As the affidavit of the hospital's counsel states, and as is argued on appeal, the reason for giving the lie detector tests was to provide better patient care by rooting out any dishonest nurses. The hospital at no time has argued that the examinations were given for the purpose of determining litigation strategy. Therefore, the information is simply not covered by the privilege, regardless of whether the employees involved were part of the control group. As the Supreme Court of Montana recently noted:

> "While there are certain communications between a hospital and its attorney which are protected, the attorney-client relationship does not automatically give rise to immunization of every piece of paper a hospital files with its attorney. A privilege cannot be created in a subject matter merely by transmitting it to an attorney." *Clark v. Norris* (Mont. 1987), 734 P.2d 182, 187.

In summary, we conclude that the polygraph results which plaintiff seeks are generally discoverable and are not privileged. Therefore, the trial court's order to the hospital to disclose them was not erroneous, and contemnor was properly found in contempt for violating the court's order. The judgment of contempt is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.