Francisco MARCIAL, Odessa Graham, Jolanta Nytko, and Witold Nytko, individually and in representative capacity on behalf of a class of persons similarly situated, Plaintiffs,

v.

CORONET INSURANCE COMPANY, an Illinois insurance corporation, and Elston Claims Service, a corporation, Defendants.

No. 87 C 3072.

United States District Court, N.D. Illinois, E.D.

Oct. 25, 1988.

Ronald S. Fishman, Fishman & Fishman, Mark D. DeBofsky, Debofsky & Debofsky, Chicago, Ill., for plaintiffs.

Alvin R. Becker, Steven P. Garmisa, Beermann, Swerdlove, Woloshin, Barezky & Berkson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This lawsuit involves allegations that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") through a fraudulent scheme to deny automobile insurance claims based on polygraph examinations. Three motions are presently before the court: plaintiffs' motion for class certification, plaintiffs' motion to amend their complaint, and defendants' motion for summary judgment.

Plaintiffs seek to certify a class defined as follows:

All persons who (1) purchased automobile insurance from Coronet; (2) made claims under the theft or vandalism provisions of their policy; (3) were "compelled" to take polygraph examinations "as a precondition to payment of the loss;" (4) were reported to have failed the examination or refused to take the

examination; and (5) had their claims denied "without any further investigation or other basis for denial."[1]

The court declines to certify the class.

A class action is not appropriate if the numerosity requirement of Fed.R. Civ.P. 23(a)(1) is not satisfied. To obtain class certification, it is not necessary to determine the exact number of members in the class. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). However, a mere conclusory allegation that joinder is impractical or speculation as to the size of the class is not sufficient. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976) (per curiam). Plaintiffs refer to evidence that about 400 persons failed defendants' polygraph examination during the years 1983[2] through 1987. During the same period, about 600 theft claims were denied. Plaintiffs therefore claim the class would consist of about 400 to 600 persons.[3] Plaintiffs, however, provide no indication as to how many of the 400 to 600 persons were "compelled" to take polygraph examinations nor how many had their claims denied without any basis or investigation other than a polygraph examination. The allegations of numerosity are therefore too speculative to satisfy the requirements of Rule 23(a)(1). *See Travis v. City of Chicago*, No. 86 C 1133, slip op. at 5 (N.D.Ill. Sept. 16, 1987); *Hill v. Heckler*, 592 F.Supp. 1198, 1205 (W.D.Okla.1984); *Wagner v. Central Louisiana Electric Co.*, 99 F.R.D. 279, 283 (E.D.La.1983); *Jackson v. Harris*, 84 F.R.D. 602, 605–06 (N.D.Ind.1979).

Failure to satisfy the numerosity requirement is, alone, a sufficient ground for denying class certification. If the case were to proceed further, however, it is ordinarily a problem that can be corrected. In this case, though, it would be more difficult since the class definition contains specific facts that are not necessarily easily obtained. That situation highlights another reason why class certification is not appropriate. Class issues will not predominate. As the discussion below of defendants' summary judgment motions reveals, this case involves numerous factual issues going to liability that must be decided specifically as to each plaintiff. It must be determined as to each plaintiff what oral representations were made to him or her regarding the necessity of taking a polygraph examination. It must also be determined as to each plaintiff whether there was any other basis for denying coverage other than the polygraph examination. Further, damages will have to be individually determined. Therefore this case is not appropriate for a class action.

Plaintiffs seek to amend their complaint to add four new plaintiffs. Since class certification is being denied, such an amendment seems appropriate so as to preserve the claims of those plaintiffs. Plaintiffs also seek to amend the complaint so as to allege that "a disproportionate percentage of persons who take the [polygraph] examination are reported to have failed to pass the examination." Second Amended Complaint ¶ 7. Paragraph 7 of the First Amended Complaint states "almost all persons who take the examination are reported to have failed to pass the examination." Plaintiffs seek to make this amendment to conform the pleadings with evidence obtained during discovery. Defendants argue that this amendment would mean the complaint no longer would state a cause of action. Defendants argue the amendment would be inconsistent with this court's prior ruling that plaintiffs had to allege the issuance of policies with a "concurrent" intent to defraud. *See* August 18, 1987 Order at 4; November 3, 1987 Order at 4 n.

---

1. The definition presented by plaintiffs is somewhat vaguer than this, but this definition, which is taken from defendants' brief, accurately summarizes and states the definition.

2. Presumably the class would not include any persons whose claims accrued prior to March 31, 1983. *See* August 18, 1987 Order at 8 (claims accruing prior to that date are barred by statute of limitations).

3. Although only 400 failed a polygraph examination, the class could consist of 600 persons if it includes all those persons plus another 200 who refused to take such examinations.

**532**

4. The November 3 Order, however, left open the question of whether the complaint might have otherwise stated a cause of action even if the "concurrent intent" had not been alleged. *See id.* at 4 n. 4. Also, it is arguable that the Second Amended Complaint sufficiently alleges concurrent intent. The court, though, will not directly decide the question of the sufficiency of the Second Amended Complaint. The better course to take at this point in the litigation is to permit the amendment and instead focus on the merits of defendants' fully briefed motion for summary judgment. Leave to file the Second Amended Complaint is granted.

■ On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir. 1988); *Jakubiec v. Cities Services Co.,* 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material facts rests on the movant. *Id.* at 473. The nonmovant, however, must make a showing sufficient to establish an essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such instances, the movant need not provide affidavits or deposition testimony showing the nonexistence of these essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.1988).

■ The RICO predicate acts that plaintiffs claim occurred are mail and wire fraud. A necessary element of such violations is a scheme to defraud a person of money or property. 18 U.S.C. §§ 1341, 1343; *McNally v. United States,* 483 U.S.

350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *United States v. Wellman,* 830 F.2d 1453, 1462 (7th Cir.1987). This court made clear in its prior orders that, in order to make out a claim based on defrauding plaintiffs of their insurance premiums, plaintiffs had to show an intent to defraud at the time the policies were issued. Defendants argue that such an intent has not been shown since, contrary to allegations in the First Amended Complaint, the undisputed facts show that about 70–77%[4] of automobile theft claims are paid by Coronet and about 50% of those who took polygraph examinations were reported to have failed. Defendants argue that such rates are inconsistent with claiming an intent to defraud plaintiffs of their premiums. Plaintiffs do not respond to this argument and provide no argument that they can raise a disputed issue of fact as to defendants' intent at the time the policies were issued. Therefore, the claims that plaintiffs were fraudulently induced to pay insurance premiums must be dismissed. Such a dismissal, however, does not fully resolve plaintiffs' claims. They also claim they were fraudulently denied payment of their automobile theft claims. As defendants concede, plaintiffs have a property right in payment of the theft claims. *See* Defendants' Reply at 12. Therefore, it must be determined whether there is a disputed factual issue as to a scheme to defraud plaintiffs of their insurance claims.

Plaintiffs devote little of their brief to explaining how defendants schemed to defraud plaintiffs. A greater portion of the brief is devoted to attacking the reliability of polygraph examinations by citing journal articles, the Congressional Record, and court cases. On summary judgment, factual assertions are to be supported by evidence that would be admissible if presented through testimony. *See* Fed.R.Civ.P. 56(e); *Pfeil v. Rogers,* 757 F.2d 850, 860 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106

---

4. The table of theft claims paid and denied is internally inconsistent. *See* Hedl Affidavit ¶ 7. The column labeled "total theft claims", when added together, totals 2,017. Another part of the table states 2,630 total theft claims, 2,017 total number of theft claims paid, and 613 total number of unpaid theft claims. Either the "total theft claims" column should be labeled "total claims paid" or 613 theft claims are incorrectly added in twice to reach the 2,630 figure. In any event, the inconsistency is not material.

S.Ct. 1513, 89 L.Ed.2d 912 (1986). Plaintiffs have provided an affidavit of their expert which incorporated the cited documents. Plaintiffs have sufficiently raised a factual dispute that the polygraph is an unreliable method of judging truthfulness and, since plaintiffs are the nonmovant, that fact must be assumed to be true. What that fact is meant to show is somewhat difficult to discern.

Local Rule 12(m)(1) (formerly Rule 12(f)(1)) requires that a party opposing a motion for summary judgment respond to the movant's statement of material facts by specifically stating which of the asserted uncontested facts nonmovant claims are contested. Plaintiffs have not done this; they have only provided a statement under Local Rule 12(m)(2) (formerly Rule 12(f)(2)) as to the facts they believe to be material. This deficiency further contributes to difficulty in understanding plaintiffs' argument. Plaintiffs are arguing defendants were unjustified in relying on the polygraph examination. Whether it is argued there is a factual dispute as to defendants' knowledge of their unjustified reliance is less clear. There is evidence the polygraph examiner knew of studies that polygraphs were inaccurate, but it is not asserted anybody else had such knowledge nor is it asserted that the examiner agreed with these studies. But, apparently, plaintiffs are arguing the reliability of polygraph examinations is so obviously questionable that defendants must have been using it solely as a fraudulent artifice. Plaintiffs do not appear to argue, however, that mere use of the polygraph examinations to deny

claims would be a fraudulent scheme satisfying the elements of a mail or wire fraud claim.[5] Instead, they argue it was fraudulent for defendants to inform plaintiffs that they were required to take polygraph examinations, which plaintiffs argue is a requirement inconsistent with the insurance policies and Illinois law. Plaintiffs do not argue merely that Illinois law was violated, they argue that defendants made representations contrary to Illinois law.

The parties dispute whether the purported representations misstate the insurance policy or Illinois law. Defendants also question whether such representations, assuming they are misstatements, could constitute fraud instead of just a contract or insurance law violation. There is also a dispute over whether there is sufficient evidence that defendants told plaintiffs the polygraph examination was "required."

Misrepresentations of law generally do not constitute fraud. *City of Aurora v. Green,* 126 Ill.App.3d 684, 81 Ill.Dec. 739, 742, 467 N.E.2d 610, 613 (1984); *Macon–Bibb County Hospital Authority v. Georgia Kaolin Co.,* 646 F.Supp. 90, 93 (M.D. Ga.1986), *aff'd,* 817 F.2d 98 (11th Cir.1987) (per curiam). Exceptions, though, have been recognized for deliberate misrepresentations, *Amoco Oil Co. v. Ashcraft,* 791 F.2d 519, 522 (7th Cir.1986), fiduciary relationships, *Moreau v. Oppenheim,* 663 F.2d 1300, 1310 (5th Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), and situations where "the person making the misrepresentation has superior means of information, professes a knowl-

---

**5.** It is questionable whether such a use of the polygraph would be a fraudulent scheme. Plaintiffs present no evidence that defendants falsely reported failures of the polygraph examination or even that they misrepresented to plaintiffs the reliability of the examinations, only evidence that such failures do not correlate well with falsehoods. Ordinarily, proof of a fraudulent scheme requires a showing of a "false statement of material fact." November 3, 1987 Order at 3. *See also Disher v. Information Resources, Inc.,* 691 F. Supp. 75, 86 (N.D.Ill. 1988). If the examinee failed the examination, so informing him or her is not a misrepresentation. Relying on the failure to deny an insurance claim may violate an insurance policy or insurance laws, *see* August 18, 1987 Order at 3,

but it would not constitute a fraudulent misrepresentation. The wire and mail fraud statutes, however, are read broadly and are not limited to common law concepts of fraud. *United States v. McNeive,* 536 F.2d 1245, 1247 (8th Cir.1976). "No misrepresentation of fact is required if the scheme is reasonably calculated to deceive persons of ordinary prudence." *Id.* at 1249 n. 10. Since not raised by plaintiffs, it is unnecessary to decide if mere use of unreliable polygraph examinations to deny insurance claims can constitute deception under the mail and wire fraud statutes. Still, it would seem that there could be no deception absent there being more to the scheme then merely unjustified reliance on polygraph results.

edge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed," *Ford Motor Credit Co. v. Milburn,* 615 F.2d 892, 895 (10th Cir.1980).

Regulation 919.60(d) of the Illinois Department of Insurance provides:

No company shall require any insured to submit to a polygraph or other similar type of examination as a condition precedent to payment of a claim. The use of examinations under oath, sworn statements or similar procedures authorized under the terms of the applicable insurance contracts shall not be restricted.

The courts of Illinois have held that results of polygraph examinations are not admissible in court as substantive evidence. *Marsh v. Lake Forest Hospital,* 166 Ill. App.3d 70, 116 Ill.Dec. 612, 614–15, 519 N.E.2d 504, 506–07, *leave to appeal denied,* 121 Ill.2d 571, 122 Ill.Dec. 439, 526 N.E.2d 832 (1988). It has also been held that polygraph results are admissible to show an insurance company acted in good faith in denying an insured's claim. *Moskos v. National Ben Franklin Insurance Co.,* 60 Ill.App.3d 130, 17 Ill.Dec. 389, 392, 376 N.E.2d 388, 391 (1978). Thus, under Illinois law, an insurance company can request a claimant take a polygraph examination, but the insured cannot be required to take the examination as a condition for payment of his claim. It is also possible for an insurance company to have a good faith reliance on polygraph results, even if the results cannot be used in court or administrative proceedings to prove the lack of merit of a claim.

Plaintiffs Francisco Marcial and Odessa Graham testified at their depositions that they were told by defendants that they had to take the polygraph examinations or their claims would be denied.[6] This must be assumed to be true. While it would be a violation of Regulation 919.60(d) to impose such a requirement, Marcial and Graham did not testify that they were told Illinois law or the insurance policy required the polygraph examination. Therefore, their deposition testimony only supports a contract or insurance law claim, not a claim for fraud. Defendants were not being deceptive; under Coronent's practices—at least those practices shown by plaintiffs' evidence—the claims would indeed be denied if the request for a polygraph examination was refused.

Plaintiffs also claim they were deceived by a letter that apparently was sent to all of them. The letter stated the following:

[1] In order to speed up investigation and settlement of your claim, we request that you submit to a polygraph test.
[2] If you do not submit to a polygraph test, you will be required to appear and give a statement under oath, in the presence of a court reporter.
[3] The above is authorized and required under the terms of your policy.
[4] Please contact this office to set up an appointment as soon as possible.
[5] Your cooperation in this matter would be most appreciated and certainly helpful.

Defendants claim this letter was consistent with Condition 5 of Coronet's automobile policy which states in part: "the insured shall cooperate with the company." Condition 7(b) of the policy provides that Coronet can require a statement under oath.

The form letter is not inconsistent with Illinois law. It also does not misrepresent the requirements of the policy. Defendants claim "The above" in ¶ 3 refers only to ¶ 2. While ambiguous, a better reading is to understand it as referring to both of the above paragraphs. Paragraphs 1 and 2 state a polygraph test is requested, but a statement under oath will be required if the polygraph test is refused. The letter does not say a polygraph test is required. Thus, stating "the above" is "authorized and required" by the policy is not inaccurate. The policy specifically permits Coronet to require a statement under oath and in no way forbids Coronet from permitting a polygraph test as a substitute. Since the letter does not misrepresent the require-

---

**6.** Plaintiff Witold Nytko only testified he was told, "You have to take the polygraph test in order to speed up the case." This is not neces-

sarily inconsistent with Illinois law. No statements are provided from the plaintiffs added in the Second Amended Complaint.

ments of the policy or Illinois law, plaintiffs have failed to show the existence of a fraudulent scheme based on misrepresentations of law.

Plaintiffs have failed to raise a genuine issue of material fact as to the existence of mail or wire fraud violations as RICO predicate acts. Therefore Counts I through VII of the Second Amended Complaint must be dismissed with prejudice. The remaining counts are all pendent state law claims. Since no substantive federal claim remains, those claims are dismissed without prejudice for lack of subject matter jurisdiction. *See Mid–State Fertilizer Co. v. The Exchange National Bank of Chicago,* 693 F.Supp. 666, 674 (N.D.Ill.1988).

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion to file amended complaint is granted and the Second Amended Complaint is filed instanter.

(2) Plaintiffs' motion for certification of a class is denied.

(3) Defendants' motion for summary judgment is granted.

(4) The Clerk of the Court is directed to enter a judgment in favor of defendants and against plaintiffs dismissing Counts I through VII of the Second Amended Complaint with prejudice and Counts VIII through XIII without prejudice with costs to defendants.