VINCENT JAMES GRANDI, Plaintiff-Appellant, v. PRABODH SHAH, Defendant-Appellee.

First District (4th Division)    No. 1—91—2303

Opinion filed April 14, 1994.

552

Thomas J. Karacic, Kenneth A. Helmin, and Sam Panger, Jr., all of Katz, Karacic & Helmin, of Chicago, for appellant.

Jack T. Riley, Jr., and Charles W. Planek, both of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff filed this medical malpractice action in the circuit court of Cook County seeking damages for injuries he sustained from chemotherapy treatment administered by defendant. Following trial, the jury returned a verdict in defendant's favor and the trial court entered judgment thereon. Plaintiff appeals contending (1) the trial court improperly excluded certain evidence; (2) he was denied a fair trial based on defense counsel's closing argument; and (3) the verdict was against the manifest weight of the evidence.

We reverse and remand.

Plaintiff, Vincent James Grandi, originally brought this action against several defendants, including Little Company of Mary Hospital, hospital receptionist Carol Stancato and hospital nurse Ethel Misuraca. Prior to trial, however, all defendants except defendant Dr. Prabodh Shah entered a settlement agreement with plaintiff and were dismissed from the suit. Plaintiff's action proceeded to trial solely against Dr. Shah, and the following evidence was presented.

In August 1982, plaintiff underwent surgery at Little Company of Mary Hospital in Evergreen Park, Illinois (hereinafter the hospital), to have a cancerous tumor removed from his stomach. Thereafter, plaintiff's doctor, Dr. Albert Guzman, referred him to defendant for additional anti-cancer treatment. Defendant met with plaintiff in November 1982 and recommended radiation therapy and chemotherapy. After receiving 30 radiation treatments, plaintiff met with defendant, who administered three chemotherapy treatments, the last of which occurred on February 10, 1983, and which also gave rise to this litigation.

On February 10, 1983, plaintiff went to defendant's office at the hospital where defendant intravenously treated him with three chemotherapy drugs. Defendant first administered Adriamycin and Oncovin, also known as vesicants, because they cause burning sensations and destroy tissue if they extravasate the vein. Extravasation, a recognized complication of chemotherapy, often occurs when chemotherapy medications are not properly administered. Defendant also administered Cytoxin, a nonvesicant.

At trial, plaintiff testified that on February 10, 1983, defendant left him alone in the treatment room after administering the vesicants. About 20 seconds later, plaintiff experienced burning sensations in his left wrist and called for help. Hospital receptionist Carol Stancato entered the treatment room and stated that everything was fine. Thereafter, defendant returned to the treatment room and stated that the needle came out of plaintiff's vein, and that the nurse should have stayed with plaintiff.

Plaintiff further testified that when he left defendant's office later that afternoon, he noticed a red spot had developed on his wrist. Plaintiff stated that his arm was reddened and swollen and he endured great pain the rest of the day. On February 12, 1983, plaintiff went to the emergency room at the hospital, where Dr. Guzman examined his red and swollen wrist. Four days later, plaintiff was readmitted to the hospital for 35 days, during which time he underwent numerous surgeries for the injuries to his wrist.

Plaintiff's wife, Marie Grandi, and his daughter, Michelle Connelly, each testified at trial that on the afternoon of February 10, 1983, they observed plaintiff's left arm to be red and swollen. Likewise, plaintiff's neighbor, Mary McGrath, testified that she saw plaintiff that same afternoon. According to Ms. McGrath, plaintiff's left arm was red and he appeared to be in pain.

Dr. Albert Guzman testified at trial that he performed surgery on plaintiff's stomach in August 1982. He stated that when he examined plaintiff on February 12, 1983, in the hospital emergency room, plaintiff was in pain and the area around his left wrist was swollen and red. Dr. Guzman further testified that during a conversation he had with defendant on or about February 17, 1983, defendant stated that the needle had accidentally come out of plaintiff's vein thereby causing plaintiff's injuries. According to Dr. Guzman, defendant admitted that the vesicants had extravasated.

Dr. James Schlenker, a plastic surgeon, testified at trial that he examined plaintiff at the hospital on or about March 14, 1983. Dr. Schlenker observed severe redness on plaintiff's forearm and opined that it was caused by the extravasation of Adriamycin. He later performed surgery on the injuries caused by the extravasation, and also for carpal tunnel syndrome and a triggering in plaintiff's left index finger, both of which resulted from the extravasation injury. According to Dr. Schlenker, plaintiff will suffer permanent residual pain from the extravasation injury, and his surgical scar will be permanent.

Ethel Misuraca, a licensed nurse, testified that she worked with defendant at the hospital and was present when he treated plaintiff

on February 10, 1983. Ms. Misuraca stated that she did not hear plaintiff complain of any pain on that day. She was unaware whether any extravasation occurred but had indicated on hospital records that plaintiff received Solu-Cortef, an antidote for extravasation injuries. Counsel for plaintiff attempted to question Ms. Misuraca concerning a post-occurrence conversation she allegedly had with hospital administrator Michael Korenchuk. After the trial court overruled defendant's objection to this line of questioning, Ms. Misuraca denied ever telling anyone, including Mr. Korenchuk, that an extravasation occurred during plaintiff's treatment.

Next, plaintiff attempted to call Mr. Korenchuk to testify concerning conversations he had with defendant and Ms. Misuraca. Defendant objected to any questioning of Mr. Korenchuk concerning the conversations based on a pretrial motion *in limine* granted by the trial court which barred the introduction of any evidence privileged under the Medical Studies Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101 *et seq.*). The trial court sustained defendant's objection, but allowed plaintiff to make an offer of proof outside the presence of the jury.

In the offer of proof, Mr. Korenchuk testified that his job as hospital administrator required him to investigate complaints made by patients. According to Mr. Korenchuk, his superiors wanted to know "everything that goes on within the hospital" and as hospital administrator, he was obligated to provide his superiors with that information. Mr. Korenchuk stated he was apprised of the February 10, 1983, incident by a hospital representative to whom plaintiff had complained. After learning of the incident, Mr. Korenchuk spoke with Ms. Misuraca, who told him that plaintiff had complained of burning during the treatment and that an extravasation had occurred.

In further testimony, Mr. Korenchuk stated that he later spoke with defendant concerning the February 10, 1983, incident. During that conversation, defendant admitted that an extravasation had occurred for which an antidote was administered. Mr. Korenchuk further testified that he did not convey the contents of his conversations with defendant and Ms. Misuraca to anyone associated with a study of patient care or mortality.

Dr. Larry Milner, plaintiff's expert witness, testified at trial that defendant failed to meet the required standard of care in administering the vesicants. Dr. Milner opined that both Adriamycin and Oncovin extravasated due to defendant's failure to properly monitor the injections. He further opined that the large degree of extravasation in plaintiff's arm could not have occurred if defendant had followed

the standard of care in administering plaintiff's chemotherapy on February 10, 1983.

In his defense, defendant testified at trial that while administering plaintiff's treatment on February 10, 1983, plaintiff never complained of any pain or burning. Defendant admitted he left the treatment room while plaintiff was receiving the vesicants. Although plaintiff complained of discomfort in his left hand when defendant returned to the treatment room, the intravenous fluid was dripping properly and the needle was properly positioned in plaintiff's vein. Defendant examined plaintiff's hand but did not notice any swelling. He did not suspect that an extravasation had occurred but administered Solu-Cortef in view of plaintiff's complaints of discomfort. Defendant stated that plaintiff did not appear to be in pain when he left his office.

Dr. Jacob Bitran, defendant's expert witness, testified that defendant did not deviate from the standard of care. However, based on his review of hospital records, Dr. Bitran could not confirm that defendant properly administered the vesicants, *i.e.*, periodically stopped while injecting the vesicants to ensure both that there was a patent vein and that the intravenous saline was flowing properly.

Following trial, the jury returned a verdict in favor of defendant. The trial court later denied plaintiff's motion for a new trial, and plaintiff filed this appeal.

Plaintiff initially contends that a new trial is warranted because the trial court improperly barred Mr. Korenchuk's testimony concerning his conversations with defendant and Ms. Misuraca. Defendant maintains, however, that the testimony was properly excluded based on the Medical Studies Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101 *et seq.*). According to defendant, the conversations were part of the hospital's fact investigation initiated for the purpose of improving patient care and were, therefore, privileged. After a careful review of the record, we agree with plaintiff that he was prejudiced by the improper exclusion of Mr. Korenchuk's testimony.

■ The Medical Studies Act (hereinafter the Act) provides in pertinent part:

> "All information, interviews, reports, statements, memoranda or other data of *** committees of [licensed or] accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged." (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101.)

556

Illinois courts have consistently recognized that the purpose of the Act is to promote effective self-evaluation within the medical profession, in an effort toward advancing the quality of health care. (*Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 40; see also *Marsh v. Lake Forest Hospital* (1988), 166 Ill. App. 3d 70, 75.) The Act is based on the belief that without such confidentiality, doctors would be reluctant to serve on peer-review committees. *Marsh*, 166 Ill. App. 3d at 75.

Without question, the Act prohibits the disclosure of information which is "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care." (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101.) However, before the information becomes privileged under the Act, it must actually belong to a committee of a licensed or an accredited hospital or its medical staff. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365.) As this court reasoned in *Willing v. St. Joseph Hospital* (1988), 176 Ill. App. 3d 737, the Act protects only information used as part of the peer-review process, but not as a result or consequence thereof. (*Willing*, 176 Ill. App. 3d at 742.) Likewise, the fact that previously acquired information is subsequently reported to a peer-review committee does not qualify the information to become privileged under the Act. *Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 41.

■ In the present case, we are persuaded that the evidence fails to establish that Mr. Korenchuk's conversations with defendant and Ms. Misuraca were privileged under the Act. We do not agree with defendant that the evidence demonstrates that Mr. Korenchuk was acting on behalf of any hospital peer-review committee when he spoke with Ms. Misuraca and defendant. During the offer of proof, Mr. Korenchuk testified that he spoke with Ms. Misuraca upon learning of the February 10, 1983, incident. At no time during the offer of proof did Mr. Korenchuk state that he spoke with either Ms. Misuraca or defendant because he was specifically asked to investigate the matter by the hospital's peer-review committee or any of the hospital's other internal committees. Moreover, Mr. Korenchuk testified that he never shared the information learned during his conversation with Ms. Misuraca or defendant with anyone associated with a study of patient care or mortality.

Without specifically addressing the import of Mr. Korenchuk's testimony during the offer of proof, defendant refers this court to numerous documents presented to the trial court for an *in camera* inspection. He claims that the documents establish that the conversations were part of an investigation initiated by Dr. Peter Talso, chairman of the hospital's patient care, medical care evaluation

and institutional review committees. Even so, we remain unpersuaded that the conversations were part of the investigation directed by Dr. Talso for the following two reasons.

First, Mr. Korenchuk testified during the offer of proof that he spoke with defendant and Ms. Misuraca because his job as hospital administrator required that he investigate patient complaints. Plaintiff correctly notes that an investigation generally undertaken by hospital administration is not protected by the Act. *Marsh v. Lake Forest Hospital* (1988), 166 Ill. App. 3d 70, 76; see also *Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29 (wherein the court held that the statutory privilege does not apply to information of a hospital's staff, but to information which actually belongs to a hospital's quality control committee).

Second, the *in camera* documents as presented in the record on appeal merely summarize the information contained in the actual hospital reports. The documents before us fail to include the actual dates the reports were generated. Consequently, we are unable to determine the actual date on which the investigation, initiated by Dr. Talso, began. In arguing that the statutory privilege applies, defendant bears both the burden of establishing its applicability and the failure to make a more complete record. (*Roach*, 157 Ill. 2d at 41.) Therefore, we cannot hold that Mr. Korenchuk's conversations were actually part of the investigation directed by Dr. Talso.

Furthermore, even if Mr. Korenchuk's conversations with defendant and Ms. Misuraca could be considered part of the hospital's internal review process, we remain unpersuaded that they were privileged. The Act does not protect all information used for internal quality control (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365), but where the committee involved consists of members of a hospital's medical staff, the committee must be engaged in the peer-review process before the statutory privilege is applicable (*Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 40). As we have already determined, the evidence fails to establish that Mr. Korenchuk was acting on behalf of any peer-review committee when he spoke with defendant or Ms. Misuraca. Therefore, we cannot hold that Mr. Korenchuk's testimony concerning his conversations with defendant and Ms. Misuraca were privileged under the Medical Studies Act.

Based on our careful review of the record, we agree with plaintiff that the trial court improperly excluded the testimony of Mr. Korenchuk. Since we are unable to say that Mr. Korenchuk's testimony would not have affected the verdict rendered by the jury, we hold that plaintiff is entitled to a new trial. (*Roach*, 157 Ill. 2d at 43.) Consequently, we deem it unnecessary to address plaintiff's remaining contentions and remand this cause for a new trial.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CAHILL, P.J., and HOFFMAN, J., concur.