EDWARD ELECTRIC COMPANY, Plaintiff-Appellant, v. AUTOMATION, INC., *et al.*, Defendants-Appellees (Emery Air Freight, Inc., Counterplaintiff-Appellee; Anchor Conveyors, Inc., Counterdefendant-Appellant).

First District (4th Division)   Nos. 1—91—1630, 1—91—1745 cons.

Opinion filed May 7, 1992.—Rehearing denied June 11, 1992.

Joseph D. Keenan III, of Puchalski, Keenan & Reimer, of Chicago, for appellant Edward Electric Company.

Jeanine L. Stevens, of Chicago, and Kasimer & Ittig, P.C., of Washington, D.C. (Gerard W. Ittig and Judith B. Ittig, of counsel), for appellant Anchor Conveyors, Inc.

Elliott D. Hartstein, of Cohon, Raizes & Regal, of Chicago, for appellee Emery Air Freight, Inc.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

These consolidated appeals arise from the circuit court's denial of motions by plaintiff Edward Electric Company (Edward) and counterdefendant Anchor Conveyors, Inc. (Anchor), to confirm an arbitration award. The court instead granted the motion of defendant Emery Air Freight, Inc. (Emery), to vacate the award in its entirety. Edward and Anchor have appealed, contending that the circuit court conducted an impermissibly broad review of the arbitration award and erred in concluding that grounds existed for vacating the award.

The arbitration proceedings stemmed from the construction of a package handling and sortation system at Emery's facility in Des Plaines, Illinois. Anchor was the general contractor on the project and was responsible for installing both the package handling and sortation system and a unified loading device (ULD) system. Automation, Inc., had a subcontract with Anchor to provide the electrical work and solicited Edward's participation in the project. According to Edward, it initially entered the project as a joint venturer with Automation but subsequently became a subcontractor of Automation.

Edward filed suit against Emery, Anchor and Automation requesting various forms of relief including damages, an accounting and a mechanic's lien. Emery filed a counterclaim against Anchor seeking damages for delay and incomplete work, and Anchor filed a counterclaim against Emery seeking money damages. Anchor also filed a mo-

tion to compel arbitration which was denied. On appeal, this court reversed the trial court and ordered Anchor and Emery to submit their disputes to arbitration. *Edward Electric Co. v. Automation, Inc.* (1987), 164 Ill. App. 3d 547, 518 N.E.2d 172.

Anchor filed an arbitration demand with the American Arbitration Association (AAA) asserting a demand against Emery in the amount of $726,364.22 plus interest and costs. In its brief to the arbitrators, Anchor requested damages from Emery in the amount of $1,628,305.84. When Anchor and Emery were unable to agree upon a panel of arbitrators, the AAA in accordance with paragraph 13 of its construction industry arbitration rules appointed three arbitrators. The panel consisted of two architects and a general contractor. Emery objected to the panel on the grounds that at least one of the arbitrators should have been a lawyer. The AAA rejected Emery's objection and confirmed the appointment of the panel.

Before the arbitration proceedings began, Emery filed a motion to compel the admission of Edward as a party to the arbitration. Edward agreed to participate. On May 11, 1989, Emery, Anchor and Edward executed a written arbitration agreement. The agreement provided in pertinent part:

> "[Emery, Anchor and Edward] hereby agree to submit to binding arbitration all controversies, claims, and disputes arising out of or relating to the parties' involvement in the construction and installation of a ULD Handling System and a Package Handling System at Emery Air Freight Corporation's facility in Des Plaines, Illinois. *** The extent of Edward's claims in arbitration will be the same claims that Edward has raised against Anchor and Emery in court. *** This arbitration shall be conducted in accordance with the Construction Industry Rules of the American Arbitration Association."

The agreement also stated that the dispute would be submitted to "the arbitration panel which had been nominated to arbitrate the disputes between Anchor Conveyors, Inc. and Emery Air Freight Corporation." The parties agreed "to abide by and perform any award(s) rendered by the arbitrators, and that a judgment of the court having jurisdiction may be entered upon the award(s), subject to all rights of the parties under the Illinois Uniform Arbitration Act *** and the Construction Industry Rules of the American Arbitration Association."

One of the claims which Edward submitted to the arbitrators was a mechanic's lien claim against Emery in the amount of $119,633.50 based on labor and materials furnished in connection with the installa-

tion of "a package handling system and ULD handling system" at Emery's facility. The first amended complaint filed by Edward in the circuit court similarly sought a mechanic's lien in the amount of $119,633.50, but referred only to a "package to sortation system" and did not specifically mention the ULD handling system.[1] Both the arbitration claim and the court complaint filed by Edward sought money damages against Emery for breach of contract. In count V of its arbitration claim, Edward alleged that Emery made false representations that were "willful, wanton and in reckless disregard of truth" and requested punitive damages in excess of $100,000. In count II of its arbitration claim, Edward asserted a contract claim against Anchor in the amount of $30,324.78 plus interest.

The arbitration hearings took place over the course of 15 days between June 1, 1989, and December 1, 1989. On May 3, 1990, the arbitrators issued a unanimous award which provided as follows:

"1. Emery Air Freight Corporation shall pay to Anchor Conveyors, Inc. the sum of Eight Hundred Sixty-Eight Thousand, Three Hundred Sixty Dollars and Fifty-Eight Cents ($868,360.58).

2. Emery Air Freight Corporation shall pay to Edward Electric Company the sum of One Hundred Seventy-Nine Thousand, Eight Hundred Dollars and Nineteen Cents ($179,800.19) plus punitive damages in the amount of One Hundred Fifty Thousand Dollars and No Cents ($150,000.00).

3. If Emery Air Freight Corporation doesn't pay Edward Electric Company, Edward Electric Company shall have a mechanic's lien in the amount of $119,633.50 upon the leasehold interest of Emery Air Freight Corporation on premises at 401 West Touhy Avenue, Des Plaines, Illinois, said amount, $119,633.50 is included in the $179,800.19 Emery Air Freight Corporation must pay to Edward Electric Company.

[Paragraph 4 divided the administrative fees and expenses of the AAA among the parties.]

5. This Award is in full settlement of all claims and counterclaims submitted to this arbitration."

On May 18, 1990, Emery filed a request for clarification and correction of the arbitration award pursuant to section 9 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 109). On

---

[1]Edward subsequently amended the mechanic's lien to include Anchor as a defendant.

May 23, 1990, the AAA advised Emery that the request had been denied. Counsel for Emery learned that one of the arbitrators advised the AAA not to forward the request to the arbitrators and to inform Emery that it was denied.

Edward and Anchor then filed motions in the circuit court for a judgment confirming the arbitration award. Emery filed a petition to vacate the award. Following argument, the trial court denied the motions to confirm the award, vacated the award in its entirety and remanded the matter to a new panel of arbitrators specifying that one of the arbitrators should be a lawyer with a background in mechanic's lien laws. In vacating the award, the trial court found that the arbitrators were biased, that they failed to make a complete determination of all the issues and that they improperly considered a certain claim raised by Edward. The court further found that the arbitrators made a gross mistake of law in failing to award a mechanic's lien jointly against Emery and Anchor and that the arbitrators exceeded their authority in awarding punitive damages.

Edward and Anchor have appealed, contending that the trial court erred in conducting an impermissibly broad review of the arbitration award and in finding that grounds existed for vacating the award.

■ The object of arbitration is to avoid the formalities, delay and expenses of litigation in court. (*Seither & Cherry Co. v. Illinois Bank Building Corp.* (1981), 95 Ill. App. 3d 191, 195, 419 N.E.2d 940.) It is well established that judicial review of an arbitrator's award is intended to be more limited than appellate review of a trial court's decision. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 394, 574 N.E.2d 636.) As the Supreme Court stated in *Burchell v. Marsh* (1855), 58 U.S. 344, 15 L. Ed. 96:

> "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." (*Burchell*, 58 U.S. at 349, 15 L. Ed. at 99.)

Thus, whenever possible, a court must construe an award so as to uphold its validity. *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 10, 389 N.E.2d 1181.

■ In determining whether grounds exist to vacate an arbitration award, judicial review generally extends only to those areas expressly stated by statute. (*Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 223, 441 N.E.2d 1333.) Section 12(a) of the Illinois Uniform Arbitration Act provides:

> "(a) Upon application of a party, the court shall vacate an award where:
>
> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5[2], as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award." (Ill. Rev. Stat. 1989, ch. 10, par. 112(a).)

Case law has established that in addition to the grounds stated above, an arbitration award may be vacated if it results in the contravention of a paramount consideration of public policy (*American Federation of State, County & Municipal Employees v. State of Illinois* (1988), 124 Ill. 2d 246, 260, 529 N.E.2d 534), where a gross error of law or fact appears on the face of the award (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 393, 574 N.E.2d 636), or where the award fails to dispose of all matters properly submitted to the arbitra-

---

[2]Section 5 provides, in pertinent part, that "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Section 5 also provides that "[t]he hearing shall be conducted by all the arbitrators." Ill. Rev. Stat. 1989, ch. 10, pars. 105(b), (c).

tors (*Harris v. Allied American Insurance Co.* (1987), 152 Ill. App. 3d 88, 90, 504 N.E.2d 151).

Emery contends that the arbitration award was properly vacated because several of the grounds listed above were established. First, Emery maintains that the award of a mechanic's lien solely against Emery violated section 28 of the Mechanics' Liens Act, which requires that actions of subcontractors against an owner must be brought against the owner and contractor jointly and that all judgments must be against both the owner and contractor jointly. (Ill. Rev. Stat. 1989, ch. 82, par. 28.) Thus, Emery contends that the arbitrator's failure to award a mechanic's lien jointly against Emery and Anchor constituted a gross mistake of law appearing on the face of the award.

■ It is well settled that an arbitration award will not be vacated on the ground that the arbitrators misinterpreted the applicable law. (*Freeport Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1006, 378 N.E.2d 558.) The Uniform Arbitration Act does not expressly recognize any remedy for an arbitrator's misapplication of law. (Ill. Rev. Stat. 1989, ch. 10, par. 101 *et seq.*; *Freeport*, 61 Ill. App. 3d 999, 378 N.E.2d 558.) This is because the arbitrators, by the choice of the parties, become the judges of both the law and the facts. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 602, 77 N.E. 327.) In *White Star*, the supreme court made the following response to the contention that an arbitration award should be vacated because of a mistake of law:

> "[T]he position of appellant now is that the parties only intended to be bound by the decision of the arbitrators provided their decision sustained its, or his, contention as to what the law was. If that is so, then the controversy was no nearer a settlement after the award than before. Either party finding his views of the law not sustained by the award could go into court and have it set aside or have the court determine his legal rights. If such a position is tenable, then *** the award was the commencement, and not the end, of litigation. *** The case was to be decided according to law, but the arbitrators, in the absence of an expressed intention to the contrary, were to be their own judges as to what the law was, otherwise the parties would have provided that the case should be subject to review by the courts or that the legal questions should be referred to some other tribunal for final determination." *White Star*, 220 Ill. at 605-06, 77 N.E. at 337.

■ It is true, as Emery asserts, that case law has recognized that an arbitration award may be vacated because of a gross mistake of law or fact which appears on the face of the award. (*Rauh v. Rockport Products Corp.* (1991), 143 Ill. 2d 377, 393, 574 N.E.2d 636.) The courts should be careful, however, to "avoid a wrong use of the word 'mistake.'" (*White Star*, 220 Ill. at 602, 77 N.E. at 336.) As stated in *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 477, 427 N.E.2d 1199, 1202, "[o]nly where it appears on the face of the award (and not in the arbitrator's opinion) that the arbitrator was so mistaken as to the law that, if apprised of the mistake, the award would be different may a court review the legal reasoning used to reach the decision." Thus, many courts have treated this judicially created addition to the statutory grounds for vacating an award as "severely limited." *Freeport Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1006, 378 N.E.2d 558, 564.

■ In the case at bar, the alleged gross mistake of law was the arbitrators' failure to award the mechanic's lien jointly against Emery and Anchor. Emery does not, however, argue in what way it has been affected by this mistake. Even accepting Emery's contention that a mistake of law appeared on the face of the award, we do not believe that a mistake which does not affect Emery may be characterized as a "gross" mistake sufficient to provide grounds for vacating the award. In *Stearns v. Cope* (1884), 109 Ill. 340, 345, the supreme court stated that "[i]t is a rule of law, as well as of common sense, that a party will not be heard to complain of an error that works him no injury. *** This principle applies with the same force to arbitrations that it does to proceedings in courts of justice." As stated above, the concept of mistake as a basis for vacating an arbitration award has a very limited application. We do not believe that it provided a basis for vacating the award here.

■ Emery next contends that the arbitration award was properly vacated because it did not dispose of the entire dispute between the parties. Case law provides that an arbitration award may be vacated where it does not dispose of all matters properly submitted to the arbitrators for their consideration and ruling. (*Harris v. Allied American Insurance Co.* (1987), 152 Ill. App. 3d 88, 90, 504 N.E.2d 151.) Emery argues that the arbitrators failed to resolve Edward's contract claim against Anchor as well as Emery's cross-claim against Anchor. Emery also argues that the arbitrators' failure to render a mechanic's lien jointly against Anchor and Emery left Edward's mechanic's lien claim against Anchor unresolved.

■ The arbitration award provided in paragraph 5 that it was in full settlement of all claims and counterclaims submitted to the arbitration. There is a presumption that the arbitrators considered and fully determined all matters submitted to them. (*Stearns v. Cope* (1884), 109 Ill. 340, 348-49.) Where, as here, the controversy contains interrelated claims and cross-claims for money damages, it is not necessary for the award to show how each item of the parties' respective demands was resolved. (*Stearns,* 109 Ill. 340.) Rather, "[t]he awarding of a gross sum of money in such case will be presumed to be a complete adjustment of all matters of difference." *Stearns,* 109 Ill. at 348.

We believe that these principles of law are dispositive of Emery's contention. The presumption exists that the arbitrators considered all of the claims raised by each of the parties in determining their award. There is no requirement, either in the law or in the parties' arbitration agreement, that the award had to set out specific findings on each separate claim.

■ Emery next contends that the award was properly vacated under section 12(a)(4) of the Illinois Uniform Arbitration Act, which states that an award may be vacated upon a showing that the arbitration hearing was conducted contrary to the provisions of section 5 of the Act. Section 5 provides, in pertinent part, that "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Section 5 also provides that "[t]he hearing shall be conducted by all the arbitrators." Ill. Rev. Stat. 1989, ch. 10, pars. 112(a)(4), 105(b), (c).

Emery makes two specific arguments to support its contention that the arbitration hearing was conducted contrary to the provisions of section 5. First, it argues that the arbitrators allowed the introduction of significant evidence by way of affidavit and therefore denied Emery its right of cross-examination. Emery cites no authority to support this argument. As pointed out by Edward, the construction industry rules, which the parties agreed would apply to this arbitration, provide for both the introduction of evidence by affidavit and the subpoena of witnesses upon the request of any party. Furthermore, section 5 provides that the right to cross-examine extends to "witnesses appearing at the hearing." We are not persuaded that the arbitrators' allowance of the affidavit constituted a violation of section 5.

■ Emery's second argument with respect to section 5 concerns the manner in which its request for reconsideration and clarification of the award was handled. The request called for detailed findings and information as to how the arbitrators calculated the award. Em-

ery maintains that the denial of its request was the decision of a single arbitrator rather than the decision of the majority and that the arbitrator who denied the request asked the AAA administrator not to even forward Emery's request to him or the other arbitrators. Anchor and Edward respond that there is nothing in the record to indicate that the contents of Emery's request were not communicated to the arbitrators and that, in any event, the specific findings requested by Emery are not required in an arbitration award.

As we have stated above, judicial review of an arbitration proceeding is severely limited in scope. Section 5 of the Act provides only that the arbitration hearing shall be conducted by all the arbitrators and that the parties are entitled to be heard. (Ill. Rev. Stat. 1989, ch. 10, par. 105.) The parties have not directed us to any specific rule concerning the manner in which requests for reconsideration and clarification are to be handled by the arbitrators, and they disagree on the proper interpretation of the facts appearing in the record. We do not believe that it is appropriate for this court to conduct the type of invasive review of the facts suggested by Emery.

■■■ Emery next contends that the award was properly vacated pursuant to section 12(a)(2) of the Act, which states that an award may be vacated where "[t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party." (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(2).) Emery maintains that the following facts show partiality by the arbitrators: one arbitrator spoke briefly in Danish to one of the witnesses for Anchor; questioning by the arbitrators demonstrated a periodic tendency to challenge the efforts of counsel and witnesses of Emery; the arbitrators ignored the requirements of mechanic's lien law; Emery's clarification request was denied without proper consideration; and the arbitration panel did not include a lawyer.

To vacate an award based on partiality, it is necessary to show a direct, definite and demonstrable interest, on the part of the arbitrator, in the outcome of the arbitration. (*Saville International, Inc. v. Galanti Group, Inc.* (1982), 107 Ill. App. 3d 799, 800, 438 N.E.2d 509; *Freeport Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1003, 378 N.E.2d 558.) The proof of partiality may not be remote, uncertain or speculative. (*Saville,* 107 Ill. App. 3d 799, 438 N.E.2d 509.) In *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 602-03, 77 N.E. 327, 336, the court, quoting Lord Thurlow in *Knox v. Symonds,* 1 Ves. Jr. 369, cautioned against treating the arbitrators " 'as guilty of corrupt partiality merely because their award is

not such an one as the chancellor would have given.' " The court noted that " '[w]e are all too prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion.' "

In the case at bar, none of the allegations of partiality purport to demonstrate an interest by any of the arbitrators in the outcome of the arbitration. None suggest a relationship between any of the arbitrators and Emery's adversaries in the arbitration. Emery raised no objection to the fact that one of the arbitrators spoke a few words of Danish to a witness for Anchor. Also, although Emery raises the absence of a lawyer on the panel as a ground for vacating the award, there is no suggestion that the panel was selected in contravention of the parties' agreement or the rules of the AAA. In our view, the allegations of partiality are insubstantial and constitute no more than an attempt by Emery to overturn an unfavorable award. We therefore cannot conclude that the award was properly vacated based on the alleged partiality of the arbitrators.

In an argument related to the issue of partiality, Emery maintains that the amount of the award was so excessive as to indicate that it was procured through fraud or other undue means, in violation of section 12(a)(1) of the Act. The case law is clear that the award of excessive or insufficient damages is not enough in itself to raise a presumption of fraud, corruption or undue means on the part of the arbitrators. (*Tri-City Jewish Center v. Blass Riddick Chilcote* (1987), 159 Ill. App. 3d 436, 440, 512 N.E.2d 363.) The size of the award is insufficient to establish evident partiality without specific allegations of bias against the arbitrators. (*Tri-City*, 159 Ill. App. 3d 436, 512 N.E.2d 263.) Where an award is challenged as invalid, the challenger has the burden of proving his contention by clear, strong and convincing evidence. (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1052-53, 392 N.E.2d 198.) As stated above, we find no merit to Emery's allegations of partiality on the part of the arbitrators. Thus, the argument that the amount of the award was excessive is insufficient to support a finding that the award was procured by fraud or undue means.

Emery next maintains that the arbitrators exceeded their powers, thus providing grounds for vacating the award under section 12(a)(3) of the Act. Specifically, Emery argues that the arbitrators exceeded the arbitration agreement by considering Edward's claim for labor and materials in connection with the installation of the ULD handling system. Emery maintains that the arbitration agreement limited arbitration to those claims which Edward raised in the trial court

and that Edward's first amended complaint did not refer to the ULD handling system.

If the arbitrators decide a question clearly not submitted to them, then they have exceeded their authority and the award may be vacated. (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1050-51, 392 N.E.2d 198.) However, in the absence of an express reservation, the parties are presumed to agree that everything, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the arbitrators. (*Wilcox*, 73 Ill. App. 3d 1046, 392 N.E.2d 198.) Also, it is presumed that the arbitrators did not exceed their authority. *Wilcox*, 73 Ill. App. 3d 1046, 392 N.E.2d 198.

In the case at bar, the arbitration agreement stated that Emery, Anchor and Edward agreed to binding arbitration of all controversies, claims and disputes "arising out of or relating to the parties' involvement in the construction and installation of a ULD Handling System and a Package Handling System" at Emery's facility. The agreement then stated that the extent of Edward's claims in arbitration would be "the same claims that Edward has raised against Anchor and Emery in court." In its first amended complaint, Edward requested a mechanic's lien in the amount of $119,633.50 based on labor and materials furnished in installing a "package to sortation system." Edward's arbitration claim requested a mechanic's lien in the amount of $119,633.50 for labor and materials furnished in connection with the installation of "a package handling system and ULD handling system." Although Edward's court claim did not specifically refer to the ULD handling system, it appears clear from the relief requested that Edward was suing for all labor and materials furnished on the project. Thus, we are not persuaded that Edward was attempting to add a new claim in arbitration. Furthermore, the arbitration agreement specifically provided that claims concerning the ULD handling system were to be included in the arbitration. It is our view that the arbitrators acted within their authority in deciding Edward's claim against Emery.

Emery then argues that the arbitrators exceeded their authority in awarding Edward punitive damages. Edward responds that the punitive damages claim was raised in its first amended complaint and was therefore properly within the scope of the arbitration. The parties agreed that the issue of whether an arbitrator may award punitive damages has not been previously considered in Illinois.

The jurisdictions which have considered the issue appear to fall into three categories. The first category, led by the Federal courts, espouses the view that arbitrators are empowered to award punitive

damages unless the arbitration agreement states otherwise. (*Raytheon Co. v. Automated Business Systems, Inc.* (1st Cir. 1989), 882 F.2d 6; *Regina Construction Corp. v. Envirmech Contracting Corp.* (1989), 82 Md. App. 662, 565 A.2d 693.) These courts reason that the power to award punitive damages is essential to the arbitrators' ability to award complete relief. As stated in *Raytheon*, "the fact that the parties agreed to resolve their dispute through an expedited and less formal procedure does not mean that they should be required to surrender a legitimate claim to damages." *Raytheon*, 882 F.2d at 12.

A second group of jurisdictions takes the view that the awarding of punitive damages is a sanction reserved to the State and that arbitrators do not have the power to award punitive damages regardless of the parties' agreement. (*Garrity v. Lyle Stuart, Inc.* (1976), 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793; *United States Fidelity & Guaranty Co. v. DeFluiter* (Ind. App. 1983), 456 N.E.2d 429.) As stated in *Garrity*, "[s]ince enforcement of an award of punitive damages as a purely private remedy would violate public policy, an arbitrator's award which imposes punitive damages, even though agreed upon by the parties, should be vacated." *Garrity*, 40 N.Y.2d at 357, 386 N.Y.S.2d at 833, 353 N.E.2d at 795.

A third group of courts has adopted the position that punitive damages may be awarded by an arbitrator only where there is an express provision authorizing such relief in the arbitration agreement or pursuant to a stipulated submission. (*Complete Interiors, Inc. v. Behan* (Fla. App. 1990), 558 So. 2d 48.) The court in *Complete Interiors* noted that contracting parties do not normally agree to assess punitive damages for a breach of contract and that because such damages are rare in contract law, "an arbitrator's assessment of punitive damages must be grounded in express language." *Complete Interiors*, 558 So. 2d at 51.

We believe that the third approach accommodates the arbitrators' need to provide complete relief while minimizing the dangers attendant to allowing private parties to impose punitive damages. Although Illinois has not addressed the question of whether punitive damages are recoverable in arbitration, Illinois case law has clearly established that punitive damages are not favored and must be closely scrutinized. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353.) Arbitrators, however, are given much freedom in fashioning an appropriate remedy (*Garrity v. Lyle Stuart, Inc.* (1976), 40 N.Y.2d 354, 359, 386 N.Y.S.2d 831, 834, 353 N.E.2d 793), and a mistake of law is generally not sufficient cause for vacating an award. (*Freeport*

*Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1006, 378 N.E.2d 558.) As stated in *Garrity*:

" 'The trouble with an arbitration admitting a power to grant unlimited damages by way of punishment is that if the court treated such an award in the way arbitration awards are usually treated, and followed the award to the letter, it would amount to an unlimited draft upon judicial power. In the usual case, the court stops only to inquire if the award is authorized by the contract; is complete and final on its face; and if the proceeding was fairly conducted.

\*\*\* If the usual rules were followed there would be no effective judicial supervision over punitive awards in arbitration.' " *Garrity*, 40 N.Y.2d at 358-59, 386 N.Y.S.2d at 834, 353 N.E.2d at 796, quoting *Publishers' Association v. Newspaper & Mail Deliverers' Union* (1952), 280 App. Div. 500, 503, 114 N.Y.S.2d 401, 404.

Although we recognize the dangers of allowing arbitrators to award punitive damages, we are not unmindful of the need for arbitrators to have the power to award full and complete relief if arbitration is to serve as an effective substitute for litigation. We therefore conclude that punitive damages may be awarded in arbitration, but only where the parties have expressly agreed to the arbitrators' authority to award punitive damages.

In the case at bar, the arbitration agreement does not expressly provide the arbitrators with the authority to award punitive damages. The basis for the award was Edward's request for punitive damages in count V of its arbitration claim. We do not believe that this was sufficient to satisfy the requirement of an express agreement between the parties that punitive damages were within the authority of the arbitrators. Therefore, we vacate the award of $150,000 in punitive damages contained in paragraph 3 of the arbitration award.

Emery argues that arbitration awards are not severable and that vacation of the punitive damages award requires that the entire award be vacated. We do not agree. Where parts of an award are not in any manner dependent on one another, the award is severable and sustainable in part. (*Stearns v. Cope* (1884), 109 Ill. 340, 345-46.) The punitive damages award here is not dependent upon any other part of the award and may therefore be vacated without affecting the remainder of the award.

Edward and Anchor contend that they are entitled to statutory prejudgment interest on the amount of the award from May 3, 1990, the date it was entered.

██ Interest is properly allowed on arbitration awards as well as on judgments. (*Wrobel v. Argiris* (1979), 73 Ill. App. 3d 648, 649, 392 N.E.2d 681.) The relevant statute provides in pertinent part:

> "When judgment is entered upon any award *** interest shall be computed at the above rate [9% per annum], from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.)

In *Robinson v. Robinson* (1986), 140 Ill. App. 3d 610, 611, 488 N.E.2d 1349, this court stated that an award of interest on a money judgment requires that: (1) the amount of money to be paid was certain and (2) the judgment debtor enjoyed the improper use of the money during the period for which the interest is to be awarded. We believe that these two requirements were met in the instant cause. We therefore remand the cause to the trial court with directions to grant Anchor and Edward interest on the amount of the award, excluding the punitive damages award, at the statutory rate.

██ Finally, Anchor requests costs in connection with its original application to confirm the award as well as for the subsequent proceedings. Section 14 of the Illinois Uniform Arbitration Act provides that "[c]osts of the application [to confirm the award] and of the proceedings subsequent thereto *** may be awarded by the court as to the court seems just." (Ill. Rev. Stat. 1985, ch. 10, par. 114.) Anchor has not cited any case law to support its contention that it is entitled to costs. Given the fact that Emery was successful to the extent of having the punitive damages award vacated, we believe it is just that each party pay its own costs.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.