(No. 73086.—

THOMAS DRINANE *et al.*, Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

*Opinion filed November 19, 1992.*

BILANDIC, J., took no part.

William S. Wojcik, of Wojcik & Wojcik, of Chicago, for appellants.

James J. Hoffnagle and Frank C. Stevens, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

At issue in the case before us is whether an arbitration award should be set aside where the arbitrator, an attorney with a private practice of his own, had a case pending against an individual whose insurer, subject to liability on the pending lawsuit, was a party to the arbitration, and the arbitrator failed to inform the parties of that relationship.

Thomas Drinane, Edward Drinane, and Geraldine Drinane, plaintiffs, brought suit in the circuit court of Cook County against State Farm Mutual Automobile Insurance Company (State Farm) seeking to have an

arbitration award set aside. The arbitration arose pursuant to a contractual agreement between the parties. The dispute between the parties involved injuries to Thomas Drinane occasioned by an accident occurring on April 3, 1988, when he was a pedestrian struck by an uninsured motorist. The insurance policy provided for coverage of up to $100,000 for injuries caused by an uninsured motorist. The matter was submitted to the American Arbitration Association (hereinafter AAA) pursuant to the insurance policy.

Under the procedures employed by the AAA, Steven E. Yonover was selected as the sole arbitrator by the parties. Yonover is an attorney in private practice. According to the information sheet prepared for use by the AAA, Yonover's practice is primarily plaintiff-oriented.

The arbitration resulted in an award of $27,000 for the plaintiffs. Once the arbitration concluded, plaintiffs discovered the existence of Yonover's claim against an individual insured by State Farm. In the event of a judgment for Yonover's clients, State Farm would have been subject to a liability limit of $120,000 damages. State Farm's insured was represented by Querrey and Harrow, the law firm which also represented State Farm in the arbitration. State Farm and Querrey and Harrow supplied affidavits stating that none of the personnel connected with the arbitration discussed it with any of the personnel connected with Yonover's case. Also, Yonover stated in his deposition that he did not discuss his pending case with the personnel involved in the arbitration, nor did he discuss the arbitration with the personnel handling his cases. State Farm moved for summary judgment, which the circuit court denied. The plaintiffs then moved for summary judgment and the circuit court granted the motion. State Farm's petition for reconsideration was denied.

The appellate court reversed. (222 Ill. App. 3d 805.) The court determined that arbitration awards may be vacated only upon very substantial grounds, and it concluded that Yonover's failure to inform the parties of his pending case involving State Farm and Querrey and Harrow did not meet that standard. Further, the court believed that any interest the arbitrator should have disclosed was too remote, uncertain, and speculative to provide the very substantial grounds necessary to vacate an award allegedly procured by undue means, as contemplated by section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1991, ch. 10, par. 112). Plaintiffs then petitioned for leave to appeal pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315). We granted the petition and now affirm.

Courts of law have long been reluctant to vacate an award for arbitration, and all reasonable presumptions are to be indulged in favor of arbitration awards. (*McDonald v. Arnout* (1852), 14 Ill. 58.) Also, it is up to the moving party to present competent evidence to support an assertion that an award should be invalidated. *Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043; *Brown v. Atwood* (1922), 224 Ill. App. 77.

The legislature has provided a vehicle for the vacation of arbitration awards in the Uniform Arbitration Act:

"Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party." (Ill. Rev. Stat. 1991, ch. 10, par. 112.)

Thus, while courts hesitate to vacate arbitration awards, circumstances may arise which merit such an action. Plaintiffs contend the failure of Yonover to disclose his pending case involving State Farm and Querrey and Harrow constituted either undue means or prejudicial misconduct under the Uniform Arbitration Act.

Arbitration is increasingly employed as a means of dispute resolution. It allows the parties to resolve their differences quickly and efficiently. It lightens the burden on the court system of adjudicating some disputes so that others may proceed. However, it is different from the court system. It does not rely upon legal precedent. Instead, it provides for all questions of law and fact to be determined by the arbitrator. (*Garver v. Ferguson* (1979), 76 Ill. 2d 1.) Although arbitrators are not foreclosed from employing the rules of procedure, evidence or discovery of legal proceedings, they are required only to conduct the arbitration in a manner not inconsistent with the guidelines of the Uniform Arbitration Act (Ill. Rev. Stat. 1991, ch. 10, par. 101 *et seq.*). These differences are sanctioned because the parties willingly accept the absence of these safeguards in return for a final and speedy resolution of their conflict. The only safeguards imposed upon arbitration are those found in the Uniform Arbitration Act. Because courts have given arbitration such a presumption of validity once the proceeding has begun, it is essential that the process by which the arbitrator is selected be certain as to the impartiality of the arbitrator.

In *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337, the United States Supreme Court addressed the issue of whether the failure of an arbitrator to disclose a pre-existing business relationship with

a party to the arbitration constituted grounds for the vacation of an award. In a plurality opinion, the Court determined that an arbitration award had to be vacated under a Federal arbitration act similar to Illinois', which stated that vacation may be ordered "where the award was procured by corruption, fraud, or undue means," or "of any other misbehavior by which the rights of any party have been prejudiced." *Commonwealth Coatings*, 393 U.S. at 148, 21 L. Ed. 2d at 304, 89 S. Ct. at 339.

In *Commonwealth Coatings*, a three-person arbitration panel was selected. The two parties to the arbitration each selected one arbitrator, and the two arbitrators selected the third. The third arbitrator to the panel conducted an engineering consultant business. One of his regular customers in this business, a prime contractor, was a party to the arbitration. Although the third arbitrator had had no business dealings with the prime contractor for about a year preceding the arbitration, there had been repeated and significant business between the two involving fees of about $12,000 over a period of four to five years, including the rendering of services on the very projects involved in the lawsuit. These facts were unknown to the petitioner, the other party to the arbitration, until after an award had been made. The petitioner challenged the award on this basis, but the district court refused to set aside the award.

The Supreme Court reversed. In an opinion delivered by Justice Black, the Court noted that courts should be "more scrupulous to safeguard the impartiality of arbitrators * * *, since [they] have completely free rein to decide the law as well as the facts and are not subject to appellate review." (*Commonwealth Coatings*, 393 U.S. at 149, 21 L. Ed. 2d at 305, 89 S. Ct. at

339.) The Court also considered as highly significant section 18 of the rules of the AAA, which stated:

> "Section 18. Disclosure by Arbitrator of Disqualification—At the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator. Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall, in writing, so advise the Tribunal Clerk. If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with the applicable provisions of this Rule." *Commonwealth Coatings*, 393 U.S. at 149, 21 L. Ed. 2d at 305, 89 S. Ct. at 339.

The rules of the AAA have subsequently been changed to require, rather than simply request, the disclosure of potentially disqualifying information. AAA Accident Claims Rule 9 (1987).

The Court also found the basic principle of this rule to lie in the Code of Judicial Ethics, namely that it "rest[s] on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." (*Commonwealth Coatings*, 393 U.S. at 150, 21 L. Ed. 2d at 305, 89 S. Ct. at 340.) While we do not here equate the role of arbitrator with that of judge, we believe the premise set forth in *Commonwealth Coatings* to be valid, and agree with Justice Black's statement that "[w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings*, 393 U.S. at 149, 21 L. Ed. 2d at 305, 89 S. Ct. at 339.

The appellate court in the case at bar disregarded this standard, and instead adopted a more limited view, citing *Giddins v. Board of Education of City of Chicago* (1947), 398 Ill. 157. There, this court addressed the issue of whether appraisals of property must be set aside based upon various charges of bias on the part of the appraisers. In discussing the impartiality of appraisers and arbitrators, the court stated that an order to vacate an arbitration award must be bottomed on very substantial grounds. Additionally, "an interest or bias to disqualify may be small, but it must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative." (*Giddins*, 398 Ill. at 167.) Although the appellate court here concluded the *Commonwealth Coatings* standard to be unworkable, we do not believe the two to be incompatible. Undisclosed information may be direct, definite and capable of demonstration and still be of such a character as to merely create an impression of bias.

Justice White, in his concurrence in *Commonwealth Coatings*, noted that the arbitration process is best served "by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator of any financial transactions which he has had *or is negotiating with either of the parties.*" (Emphasis added.) (*Commonwealth Coatings*, 393 U.S. at 151, 21 L. Ed. 2d at 306, 89 S. Ct. at 340 (White, J., concurring, joined by Marshall, J.).) The relationship between Yonover, State Farm and Querrey and Harrow included a negotiating process in Yonover's representation of his clients.

When an arbitrator and a party to the arbitration are negotiating a separate matter, a danger arises that undue influence may occur upon the arbitrator. However, actual proof of such influence may seldom be evident where communication between the parties actually

crosses from one matter to the other. In *Moshier v. Shear* (1881), 102 Ill. 169, this court considered the difficulty in establishing the improper effects which might occur when arbitrators come into contact with evidence beyond the arbitration, stating "[s]uch effects are seldom perceptible or consciously produced." (*Moshier*, 102 Ill. at 174.) The existence of an interest or bias is a very real possibility when an arbitrator and a party to the arbitration meet separately to negotiate a separate matter. Thus, it is proper to create a presumption of bias in a factual situation such as here.

Presumptions may be overcome, however. Where sufficient evidence exists that a presumption is unwarranted, no reliance should be placed on the fact presumed. In the case at bar, the presumption of bias arises by the existence of Yonover's pending lawsuit involving State Farm and Querrey and Harrow. The potential for improper communication between these entities and Yonover is sufficient to create the presumption. We believe State Farm has sufficiently overcome this presumption by the submission of its affidavits, which detail all the personnel involved in both the present action and the one involving Yonover's clients. It is clear from these affidavits that the personnel of the defendant and its law firm handling the arbitration dispute did not communicate with the personnel handling Yonover's claim against State Farm. Furthermore, in his deposition, Yonover stated he did not discuss his case against State Farm with any of the personnel handling the arbitration, nor did he discuss the arbitration with any State Farm or Querrey and Harrow personnel handling his case. The presumption of bias created by an arbitrator's negotiating with the very parties he is arbitrating was thus overcome by the sworn statements of the individuals involved in the separate matters.

The closest analogy we can make of the situation in the case at bar is that of an improper *ex parte* communication between a judge and a party appearing before him. Such a communication is deemed improper because the judge may receive information favorable to one side without the benefit of the other party's response. The case at bar poses similar problems. With Yonover's negotiating with State Farm on his clients' behalf, the danger arose that he may have received information on the arbitration from State Farm without the benefit of the plaintiffs' response. Such a situation presented an unfair advantage to State Farm, and so the presumption of bias arose. However, where no advantage exists, then no presumption of bias should be made. State Farm provided different personnel to handle the separate claims of the plaintiffs and Yonover's clients, as did Querrey and Harrow. Because Yonover's position in the arbitration never crossed over into his communications on his clients' case, the potential for improper communication was substantially reduced, and the presumption was overcome.

While we agree with plaintiffs that Yonover should have disclosed his relationship with State Farm and Querrey and Harrow prior to his selection due to the potential for bias which that relationship represented, we believe the defendant has sufficiently overcome that presumption, and the arbitration award should stand.

The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.