CHRISTIAN DIOR, INC., Plaintiff-Appellee, v. HART SCHAFFNER AND MARX, Defendant-Appellant.

First District (3rd Division)   No. 1—93—1159

Opinion filed June 22, 1994.

Gary D. Ashman, of Chicago, for appellant.

Robert E. Shapiro and James A. Burnham, both of Barack, Ferrazzano, Kirschbaum & Perlman, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Hart Schaffner & Marx (HSM) appeals the trial court's confirmation of the unanimous arbitration award in favor of plaintiff, Christian Dior, Inc. (Dior), totalling $1,215,000. On appeal, HSM asserts that the arbitrators exceeded their authority beyond the terms of the arbitration agreement and the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 1992)) (Arbitration Act), and committed gross mistakes of law and fact.

We affirm.

HSM and Dior entered a licensing agreement wherein Dior granted HSM the exclusive license in the United States to manufacture men's clothing bearing the "Christian Dior" and "Dior" trademarks until the year 2000 (License). When serious differences arose between the parties during the late 1980's, they entered into a settlement agreement (Agreement) which provided HSM's License would terminate on September 1, 1992, although the parties would announce the termination on March 1, 1992, after which time HSM would no longer be authorized to manufacture Dior goods.

The Agreement preserved certain provisions of the original License and also placed new obligations upon HSM. For example, HSM agreed to make royalty and advertising payments to Dior and allow Dior to conduct audits of its premises for distribution or other violations of the Agreement. Any dispute arising under the Agreement would be resolved according to the rules of the American Arbitration Association using party-selected arbitrators.

In February 1992 Dior's president, Philippe Vindry, prematurely announced HSM's license termination to the media. HSM responded by informing Dior and the media that it was no longer bound to the Agreement and filed a lawsuit against Vindry and Dior's new licensee, which was dismissed.

Dior then filed a demand for arbitration as provided in the Agreement, requesting a declaration that the Agreement remained in effect with regard to HSM's royalty and advertising payments and audit obligations. Dior also sought damages for violations of the Agreement resulting from HSM's misconduct in seeking to avoid arbitration by bringing suit against Vindry instead of the company. Finally, Dior asked for a specific finding that it was not responsible for cancellations and returned goods from retailers arising from the premature license termination announcement.

HSM contested arbitration on grounds that no dispute existed between the parties. When the arbitration panel reached the opposite conclusion, HSM sought from the trial court an emergency temporary restraining order to enjoin arbitration, which was denied.

HSM then requested postponement of the hearings originally scheduled for mid-October 1992 to accommodate the relocation of its attorney's office. HSM asked for, and was granted, a continuance until early November. A few days before the hearing, HSM requested another postponement. The panel again complied, postponing the hearing by one week to begin Sunday, November 8, 1992. HSM immediately demanded another postponement to accommodate its attorney who would begin a jury trial shortly after arbitration; the panel refused.

The panel directed the parties to exchange witness and exhibit lists in preparation for the hearing. Dior alleged that HSM failed to produce documents during discovery and obstructed its efforts to obtain documents from third parties, and that HSM improperly withheld its lists until immediately before arbitration.

Four days before arbitration, Dior amended its "Demand for Arbitration" as a result of newly discovered distribution violations by HSM. HSM challenged the panel's decision to allow the amendment on grounds that it lacked sufficient time to respond to Dior's allegations.

During the morning of the first day of arbitration, HSM demanded that the panel issue a subpoena for Vindry even though HSM had failed to list him as a witness or previously require his presence. The panel refused this demand since Vindry lived in France and, with the time difference, it was almost midnight Friday there and too late to contact Vindry before the start of the weekend much less arrange for his appearance in the next two days.

On December 2, 1992, the arbitrators issued a unanimous award which declared the Agreement in "full force and effect" to bar HSM from continuing to manufacture Dior clothing, and granted Dior $1.2 million in damages as well as $15,000 for attorney fees for Vindry's defense in the original lawsuit. The panel failed to hold Dior responsible for HSM's cancelled orders and returned goods allegedly caused by the premature announcement except in one circumstance for which the panel issued HSM a royalty adjustment. The panel also rejected Dior's request for $2.5 million in liquidated damages as provided in paragraph 3.4 of the Agreement for HSM's violation of certain distribution practices also stated in said paragraph.

Notwithstanding the arbitration award, HSM continued to manufacture and distribute Dior goods. When Dior discovered the misconduct, it successfully moved to enjoin HSM. HSM ignored the injunction to require a second court order mandating compliance. At the same time, HSM filed a request for another arbitration involving the same issues decided by the unanimous award. Those proceedings are the subject of a second appeal not before this court.

On March 13, 1993, after a hearing, the trial court confirmed the arbitration award on all counts.

We now consider each of the issues raised by HSM and affirm the trial court.

HSM first argues the arbitrators exceeded their authority in awarding Dior $1.2 million since the Agreement did not provide for breach of contract damages and section 5.5 specifically prohibited the arbitrators from changing or altering the terms of the License or Agreement.

Initially, we acknowledge that courts construe arbitration awards, whenever possible, so as to uphold their validity in light of the presumption that arbitrators do not exceed their authority. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 386, 574 N.E.2d 636.) Since arbitrators are judges chosen by the parties to decide the matters submitted to them " 'finally and without appeal' " (*Edward Electric Co. v. Automation, Inc.* (1992), 229 Ill. App. 3d 89, 96-97, 593 N.E.2d 833, quoting *Burchell v. Marsh* (1855), 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99), judicial review of an arbitration award is more limited than appellate review of a trial court's decision. *Edward Electric*, 229 Ill. App. 3d at 96, citing *Rauh*, 143 Ill. 2d at 394; see *Allstate Insurance Co. v. Fisher* (1991), 212 Ill. App. 3d 712, 714, 571 N.E.2d 792.

●1 The record shows that the arbitrators followed the plain language of the Agreement in considering the breach of contract claim and awarding Dior damages for its injuries arising from HSM's wrongful conduct. Section 5.1 required arbitration of:

"[A]ll claims, disputes and controversies between the parties hereto arising out of or in connection with the Agreement or the License *** relating to the validity, construction, performance, breach, enforcement, or termination thereof, or otherwise[.]"

Once the parties executed this clause, they were "irrevocably committed" to arbitrate all disputes arising under the Agreement (*Johnson v. Baumgardt* (1991), 216 Ill. App. 3d 550, 559, 576 N.E.2d 515), including breach of contract claims. "When a dispute under such an agreement is submitted to arbitration, the arbitrator is empowered to make an award that will fully settle the dispute, and it is presumed that the parties intended that all matters in dispute be decided." (*Johnson*, 216 Ill. App. 3d at 559, citing *Hollister, Inc. v. Abbott Laboratories* (1988), 170 Ill. App. 3d 1051, 1060-61, 524 N.E.2d 1035.) Hence, as the trial court determined, the award of breach of contract damages did not constitute a modification of the Agreement or the exercise of the arbitrators' authority beyond their enumerated powers.

HSM next argues that the arbitrators exceeded their authority in granting the award upon insufficient evidence.

●2 The record shows that the panel acted properly in awarding Dior $1.2 million for breach of contract damages. Dior demonstrated that HSM failed to abide by the Agreement after it paid HSM approximately $2.4 million to provide for an early expiration date of the License, primarily to protect the integrity of the Dior trademark. Dior produced documents containing HSM's statements to the media in which HSM challenged the termination of the License, allegedly misleading Dior customers and perspective licensees. Dior also offered testimony that HSM violated the Agreement by continuing to manufacture Dior goods after the License expired, engaging in distribution violations and refusing to allow Dior representatives to audit its inventory. Further, Dior demonstrated that HSM disregarded the royalty and advertising commitments.

●3 HSM also argues that the panel exceeded its authority in awarding Dior $15,000 for legal fees incurred in defending Vindry. We disagree. The panel had discretion to consider whether HSM attempted to avoid arbitration in violation of the Agreement by filing suit against Vindry in his official rather than personal capacity and to award damages for injuries arising therefrom, especially in light of section 5.2(d), which provided for attorney fees to the prevailing party "in any arbitration pursuant to this Agreement." The trial court confirmed the attorney fees award, for reasons including the fact that Vindry "was not a party to the arbitration" and asserted no claim against HSM. Accordingly, no amounts were requested or

awarded for any of Vindry's personal litigation expenses or any injury to his reputation.

●4 Contrary to HSM's contention, Dior has not waived its damage claim. Section 6.10 of the Agreement prohibited Dior from claiming damages "resulting solely" from any diminution in HSM's sales after the March 1, 1992, disclosure of its license termination "without more." The record does not indicate that Dior brought any such claim. Instead, Dior sought redress for HSM's violations of the Agreement which allegedly devalued the Dior trademark from the perspective of customers and potential licensees.

HSM next asserts that the panel violated the Arbitration Act's provisions by: (1) failing to postpone the proceedings on a showing of good cause and commencing on a Sunday; (2) allowing Dior to add a claim to deprive HSM of the mandatory response period; (3) refusing to issue a subpoena for a material witness; and (4) drawing improper inferences from HSM's failure to produce documents which it was not required to produce.

HSM maintains that the panel's refusal to postpone the arbitration upon a showing of good cause (*i.e.*, the hearing dates followed the relocation of HSM's counsel's offices and immediately preceded a jury trial) violated the Arbitration Act. See 710 ILCS 5/12(a)(4) (West 1992).

●5 HSM attempted to avoid commencing arbitration as provided in the Agreement by contesting the existence of a dispute between the parties. After the panel rejected this argument, HSM filed a motion for a temporary restraining order to enjoin arbitration on the same basis, which the trial court denied.

After the delay, the panel scheduled arbitration for mid-October 1992. When HSM first asked the panel for a postponement to avoid a conflict with the relocation of its counsel's offices, the panel rescheduled arbitration for early November. HSM moved for another continuance on these grounds and the panel rescheduled for November 8, 9 and 10, reserving November 11 for "spill-over discussion." When HSM requested a third postponement the panel refused in order to assure compliance with the arbitration deadline established in the Agreement (*i.e.*, arbitration mandated to begin 60 days from the parties' selection of arbitrators).

Although HSM challenges the final arbitration dates as inconvenient, it fails to assert any resulting prejudice. The record shows HSM received sufficient notice of arbitration to prepare its presentation and the panel adopted certain procedures to allow every witness on HSM's witness list to testify and to provide HSM with the opportunity to conduct comprehensive cross-examinations of all Dior

witnesses. For example, the panel allowed a top HSM executive to testify out of order during the time allotted for Dior's presentation. Considering that one of the primary objects of arbitration is to avoid the delay of litigation (*Edward Electric*, 229 Ill. App. 3d at 96), we are unpersuaded by HSM's allegations of error on this issue.

●6 Similarly, we reject HSM's claim that the panel exceeded its authority by commencing the arbitration proceedings on a Sunday. When parties agree to submit to arbitration, they trade the procedural safeguards of litigation in courts of law for a final and fast resolution of their dispute. (*Drinane v. State Farm Mutual Automobile Insurance Co.* (1992), 153 Ill. 2d 207, 212, 606 N.E.2d 1181; *cf. Pederson v. Logan Square State & Savings Bank* (1941), 377 Ill. 408, 411-12, 36 N.E.2d 732 (court recognized service of summons as a nonjudicial act which can be performed on a Sunday).) The mere decision to commence arbitration on a Sunday did not violate the Agreement or the Arbitration Act, or constitute a gross mistake of law or fact to warrant vacating the award. Our exception to HSM's claim is furthered by the fact that the panel scheduled arbitration to begin on a Sunday to accommodate HSM's attorney.[1]

HSM similarly contends that it suffered prejudice by the arbitrators' decision to allow Dior to add a claim of "newly discovered" distribution violations.

●7 The record shows that the additional claim created no significant issue not already presented by Dior's demand for arbitration. Dior did not seek additional relief from HSM's alleged failure to recognize its license termination, but adhered to its arbitration demand that the Agreement remain in full force and effect. Nor did the award, which tracks Dior's prayer for relief essentially paragraph by paragraph, reach beyond the scope of the demand.

HSM further argues that the arbitrators' refusal to subpoena

---

[1]Counsel did not raise any religious issue that might relate to Sunday proceedings to require us to consider whether any first amendment issues exist, *i.e.*, whether Sunday arbitration placed a chilling effect upon counsel's exercise of freedom of religion. Although the Illinois General Assembly has not been bashful about intruding into the personal lives of our citizens, it has closed the doors of certain businesses on Sunday (retail automobile dealers (625 ILCS 5/5—106 (West 1992)); vendors of liquor (235 ILCS 5/6—14 (West 1992)); betting parlors (see 230 ILCS 5/19 (West 1992)), regulated bank hours (205 ILCS 630/17 (West 1992)) and prohibited cemetery owners and labor organizations from contracting to prohibit Sunday burials (820 ILCS 135/0.01 *et seq.* (West 1992)). In view of the activity which surrounds economic endeavors on Sunday at any shopping mall, it is difficult to engender much sympathy, legal or otherwise, on this issue.

Philippe Vindry denied it the opportunity to cross-examine a material witness. According to HSM, Vindry's testimony provided the sole means for Dior to prove its allegations regarding injuries to Dior and Vindry from its lawsuit against Vindry for his premature announcement of the license termination. Without Vindry's testimony, HSM asserts that the panel wrongfully awarded Dior attorney fees in connection with the Vindry litigation.

●8 Section 12(a)(4) of the Arbitration Act states that an award may be vacated upon a showing that the panel conducted the hearing in violation of section 5 of the Arbitration Act, which provides in pertinent part, "The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." (710 ILCS 5/12(a)(4), 5(b) (West 1992).) However, as the trial court properly determined, HSM suffered no prejudice from Vindry's absence since his testimony was not material to the proceedings.

First, HSM must accept responsibility for failing to seek Vindry's appearance on a timely basis. HSM had ample opportunity to obtain Vindry's statement and, if it desired, procure his appearance at arbitration. However, for the first two hearing dates HSM did not include Vindry on its witness lists or attempt to secure his subpoena or "indicate to anybody that [it] wanted him to be [its] witness." HSM's witness list prepared for the final hearing date similarly failed to mention Vindry. Not until late afternoon Friday, approximately midnight Paris time, did HSM demand that Dior produce Vindry at the arbitration to begin two days later. HSM delayed until the first day of the hearings to request that the panel issue the subpoena.

Moreover, Vindry was not a party to the arbitration and was making no claim on his own behalf. HSM challenges this determination by pointing to the fee award for Vindry's defense. However, Dior demonstrated that even though HSM named Vindry and not the company in its lawsuit, the substance of the complaint pertained to Vindry's actions in his representative capacity as president of Dior and on behalf of the company.

Further, the record shows that HSM failed to specify the nature of the testimony it sought from Vindry aside from the issue of Vindry's injuries stemming from the lawsuit. When the trial court asked HSM's attorney how Vindry's testimony would have supported the company's position, he responded, "I don't know." The parties stipulated that Vindry made a premature announcement so, as the trial court determined, that fact would not have been in dispute. Dior similarly stipulated that it would take complete responsibility for the announcement on grounds that Vindry acted for the company. Thus,

the question for the panel concerned HSM's actions after the termination announcement and its impact on Dior.

The arbitrators and the trial court considered the issue of the attorney fees as if HSM filed the original action to avoid arbitration, and such seems to be the case from our vantage point. We acknowledge that the request for Vindry's appearance came too late and was not material to the proceedings.

HSM also alleges that the arbitrators violated section 7(a) of the Arbitration Act by drawing negative inferences from its failure to produce documents related to the License which it was "not required or able" to produce without a subpoena from Dior.

●9 Initially, we note that HSM has alleged no claim under section 7(a), which authorizes arbitrators to issue subpoenas for the production of records and establishes procedures for service. (710 ILCS 5/7(a) (West 1992).) Moreover, HSM has failed to demonstrate that the panel drew any "improper inferences" from its alleged refusal to provide Dior with the documents at issue. Mere allegations of prejudice cannot vitiate an award. *Edward Electric*, 229 Ill. App. 3d at 101 (courts will not vacate an award based upon partiality without showing a "direct, definite and demonstrable interest" in the outcome of arbitration).

HSM's final issue on appeal concerns whether the panel committed gross errors of law or fact by: (1) allowing improper and prejudicial testimony; and (2) rendering an inconsistent award.

HSM contends that the arbitrators erred in allowing the testimony of Jennifer Sherman, a Dior attorney not included in Dior's witness list, comprised of hearsay statements. Essentially, Sherman testified about her conversation with the vice-president of a retail store (Michael McNiff) which purchased Dior clothing from HSM, who allegedly recounted that he had cancelled Dior goods to exchange them for another line of clothing manufactured by HSM. HSM argues that Sherman's testimony persuaded the panel that HSM improperly accepted cancelled orders or returned goods, an allegation central to Dior's damage claims. HSM charges that Dior "manufactured" Sherman's testimony for the hearing, especially since McNiff clarified to representatives of the American Arbitration Association two days after arbitration that the store cancelled the orders because of a decision not to continue the Dior line of goods. HSM further asserts that the trial court compounded the error by confirming the award despite its knowledge of the clarification.

●10 After reviewing the record, we agree with the trial court's decision against vacating the award on this basis. Initially, we note that although Dior did not designate Sherman as a witness, it

reserved the right to add additional witnesses as necessary to address issues which might arise during arbitration. One such issue involved the veracity of HSM's statements regarding its distribution practices with particular regard to its relations with McNiff.

At the hearing, Dior demonstrated that HSM obstructed its efforts to conduct a contractually mandated audit of HSM activities and refused to provide certain documents relevant to its distribution practices. HSM presented testimony concerning the substance of the documents but refused to produce them for Dior to consider for cross-examination. On the final day of hearings, HSM produced many of the documents at issue although none appeared on its list of exhibits. HSM later called its president to recount his conversation with Mc-Niff about the documents, and such hearsay testimony occupied much of the hearing day.

Dior contends that it had "compelling" reasons to believe that HSM's account of its distribution practices and testimony concerning McNiff's was false. The day before, Dior claims that McNiff offered a different account of the facts in a phone interview with Sherman attended by McNiff's attorney. Dior argues that the suddenness of HSM's massive document production, its decision to rely on hearsay testimony and the sheer volume of such testimony left Dior "no alternative" but to call Sherman to recount McNiff's contradictory statements from the day before. After Sherman's testimony, the panel allowed HSM to recall its president, who testified about his conversations with McNiff.

Hence, we agree with the trial court that the alleged error regarding the arbitrators' consideration of hearsay evidence is *de minimis* since Sherman's testimony responded to the hearsay testimony of the president of HSM. Although arbitrators are not foreclosed from employing rules of procedure, evidence or discovery of legal proceedings, they are only required to conduct arbitration in a manner consistent with the guidelines of the Arbitration Act. (*Drinane*, 153 Ill. 2d at 212.) HSM had the burden of demonstrating the panel's allowance of Sherman's hearsay testimony deviated from standard arbitration practices provided in the Arbitration Act and, considering the strong presumption in favor of upholding awards, has failed to do so. See *Ure v. Wangler Construction Co.* (1992), 232 Ill. App. 3d 492, 496, 597 N.E.2d 759, citing *Rauh,* 143 Ill. 2d at 391 (if an award is within the submission and contains the honest decision of the arbitrators, after a full hearing, a court will not set it aside for errors of law or fact).

438

For the foregoing reasons, we see nothing in the record that would move us to reverse the arbitrators' decision or its confirmation by the trial court.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.