GREGORY K. GREEN, as Independent Ex'r of the Estate of Christine L. Green, Deceased, Plaintiff-Appellee, v. LAKE FOREST HOSPITAL *et al.*, Defendants-Appellants (Northwest Community Hospital *et al.*, Defendants).

Second District   No. 2—01—0934

Opinion filed November 27, 2002.

Kevin T. Martin, of Swanson, Martin & Bell, of Chicago, for appellants.

David G. Pribyl, of Salvi, Schostok & Pritchard, P.C., of Waukegan, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Gregory Green, as independent executor of the estate of Christine Green, deceased, filed a survival and wrongful death action alleging medical malpractice against defendants Lake Forest Hospital (Lake Forest), Deerpath Medical Associates, Kenneth Hayes, M.D., and Alexandra Frenkel, R.N. During the course of discovery, the trial court ordered Lake Forest to disclose written forms suspending and terminating nurse Frenkel's employment with the hospital. Lake Forest refused to comply with this order on relevance grounds and invoked the statutory privilege provided in that part of the Code of Civil Procedure that constitutes the medical studies act (the Act) (735 ILCS 5/8—2101 through 8—2105 (West 2000)). The trial court held Lake Forest in contempt for refusing to comply with its disclosure order and fined it $1 per day until the matter was resolved on appeal or until the documents were produced. We vacate the trial court's contempt order and remand the case for further proceedings.

Plaintiff's complaint sought the recovery of damages from defendants resulting from their alleged medical negligence in causing decedent's death. The complaint alleged that decedent was admitted to Lake Forest on December 15, 1998, complaining of pneumonia. Plaintiff's complaint alleged that decedent died on December 16, 1998, as a result of the improper administration of a precipitating intravenous solution. As to Lake Forest and nurse Frenkel, the plaintiff alleged that these defendants failed to monitor decedent's medical condition, to advise Dr. Hayes of decedent's physical condition and important drug interactions, and to prevent the administration of the precipitating intravenous solution.

At her deposition, nurse Frenkel testified that she was disciplined after the decedent's death and that she was suspended for a period of several days. Nurse Frenkel voluntarily terminated her employment with Lake Forest 15 months after the decedent's death. Following nurse Frenkel's deposition, plaintiff filed a supplemental notice to produce to Lake Forest requesting a copy of nurse Frenkel's personnel file. Lake Forest objected to the production of certain documents in

the file and provided plaintiff with a privilege log describing the documents and setting forth the basis of its objections to disclosure. Of relevance to this appeal, Lake Forest refused to produce copies of nurse Frenkel's suspension and termination forms.

Plaintiff moved to compel production of nurse Frenkel's suspension and termination forms. In response to the motion, Lake Forest argued that the suspension form was privileged under the Act. Lake Forest further argued that the termination form contained no information that was relevant to any issue in the case. After reviewing the documents *in camera*, the trial court ruled that the suspension and termination forms were not privileged and ordered Lake Forest to produce the records. After Lake Forest refused to comply with its production order, the trial court entered an order finding Lake Forest in contempt and assessing sanctions of $1 per day until the matter was resolved on appeal or until Lake Forest produced the documents to plaintiff. Defendants then filed this timely appeal.

As they did before the trial court, defendants contend on appeal that the suspension form is privileged under the provisions of the Act. Defendants argue that the suspension form is privileged, as it documents the disciplinary and corrective steps that Lake Forest took to improve patient care. As to the termination form, although defendants do not argue that the document is privileged under the Act, they assert that it is too remote in time from the incident in question and is irrelevant to any issue in the case.

■ We first consider whether the suspension form is privileged under the Act. Section 8—2101 of the Act provides, in relevant part, as follows:

> "All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of *** committees of licensed or accredited hospitals or their medical staffs ***, used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." 735 ILCS 5/8—2101 (West 2000).

Section 8—2102 of the Act further provides that such privileged materials "shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS 5/8—2102 (West 2000). The burden of establish-

ing the applicability of this statutory privilege is upon the party seeking to invoke the privilege. *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 41 (1993). Whether the privilege applies is a question of law, and our standard of review is *de novo. Niven v. Siqueira*, 109 Ill. 2d 357, 368 (1985). However, the question of whether specific materials are part of a medical study is a factual question within this legal determination. *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 401 (1998).

The purpose of the Act is to ensure that the members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care. *Roach*, 157 Ill. 2d at 40. The Act is premised on the belief that, absent a peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in candid evaluation of their colleagues. *Roach*, 157 Ill. 2d at 40. Therefore, the Act has been interpreted to protect against disclosure of the mechanisms of the peer-review process, including information gathering and deliberation leading to the ultimate decision rendered by a hospital peer-review committee. *Chicago Trust Co.*, 298 Ill. App. 3d at 402. Documents generated specifically for the use of a peer-review committee receive protection under the Act. *Chicago Trust*, 298 Ill. App. 3d at 402. However, the Act does not protect against disclosure of the peer-review committee's recommendations after completion of the peer-review process. *Chicago Trust*, 298 Ill. App. 3d at 405.

■ Here, Lake Forest has failed to present any evidence that the suspension form in question was a document generated for the use of a peer-review committee. This one-page document was part of nurse Frenkel's employment file. The suspension form does not specifically reference the event in question or make reference to any hospital investigating committee. The suspension form notifies nurse Frenkel that she has been placed on a three-day suspension without pay. As the form does not appear to have been generated for use by a peer-review committee, we do not believe that its disclosure would improperly intrude upon any confidential peer-review process.

Lake Forest argues that the suspension form is privileged because it documents the discipline administered to nurse Frenkel as a result of her role in this incident. Lake Forest asserts that application of the privilege to the suspension form is therefore consistent with the Act's purpose to "encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease." *Niven*, 109 Ill. 2d at 366. We reject this reasoning for two reasons. First, as already noted, the suspension form does not indicate that Frenkel's suspension was recommended by

a peer-review committee. Unlike investigations performed by hospital committees, internal investigations performed by the hospital's administration are not privileged. *Grandi v. Shah*, 261 Ill. App. 3d 551, 557 (1994); *Marsh v. Lake Forest Hospital*, 166 Ill. App. 3d 70, 76 (1988). Second, even assuming that her suspension was recommended by a peer-review committee, such a finding would not be protected from disclosure because the recommendations and findings of a peer-review committee are not privileged under the Act. See *Chicago Trust*, 298 Ill. App. 3d at 405. The Act only protects the investigative and deliberative materials generated by a hospital committee in formulating its recommendations. *Roach*, 157 Ill. 2d at 39-41.

Lake Forest's primary authority, *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388 (1989), illustrates the limits of the statutory privilege. In that case, the plaintiff submitted interrogatories to the defendant hospital, seeking information to determine whether the defendant doctor's privileges had been suspended or restricted, the dates that the suspension or restrictions were imposed, the specific nature of the restrictions, what methods the hospital utilized to determine whether the doctor was fit for reappointment, and what measures the hospital undertook to supervise the doctor when he was admitting and treating patients. *Pritchard*, 191 Ill. App. 3d at 393-94. The reviewing court held that, although the plaintiff could not discover what methods the hospital utilized to determine the doctor's fitness, the plaintiff could discover whether the doctor had been suspended or restricted and the nature of any such suspension or restriction. *Pritchard*, 191 Ill. App. 3d at 399. The court explained:

> "Under the plain language of the Act, the restrictions imposed by a hospital on a particular physician's privileges to practice as a result of the internal review process are discoverable [citations], but the nature and content of the [peer-review] process itself *** is privileged and confidential." *Pritchard*, 191 Ill. App. 3d at 399.

Applying these principles to this case, it is clear that nurse Frenkel's suspension form is not privileged under the Act. Any discipline or restriction placed on nurse Frenkel by Lake Forest as a result of an internal review process is discoverable. See *Pritchard*, 191 Ill. App. 3d at 399. Because the form contains no information relating to the nature and content of any peer-review process, it falls outside the protections of the Act. See *Pritchard*, 191 Ill. App. 3d at 399. Accordingly, we agree with the trial court that the document is not privileged under the Act.

We next turn to a consideration of the relevance of the termination form. The form, which appears to be an internal business record, indicates that nurse Frenkel resigned her employment with Lake For-

est on March 12, 1999, some 15 months after the decedent's death. The form indicates that nurse Frenkel left her employment with Lake Forest for another opportunity. Lake Forest contends that the form is irrelevant because the reason for nurse Frenkel's termination is not related to any of the issues raised in the case.

Relevant evidence is defined as " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Spencer v. Wandolowski*, 264 Ill. App. 3d 611, 617 (1994), quoting Fed. R. Evid. 401. Evidence that is too remote in time from the issues involved in the case is irrelevant. *Spencer*, 264 Ill. App. 3d at 618-19. The determination whether evidence is relevant rests within the sound discretion of the trial court, and its decision will not be overturned by a reviewing court absent an abuse of that discretion. *O'Brien v. Hertl*, 238 Ill. App. 3d 217, 223 (1992).

We believe that the contents of the termination form are irrelevant to any issue in this case. The fact that nurse Frenkel resigned from Lake Forest to take advantage of another employment opportunity 15 months after the incident alleged in this lawsuit is too remote to be relevant. See generally *In re Estate of Kline*, 245 Ill. App. 3d 413, 433-34 (1993). The form contains no information indicating that nurse Frenkel's termination was involuntary or was related to the incident alleged in the lawsuit. Accordingly, discovery of the form will not lead to any material or admissible evidence. We therefore hold that the trial court abused its discretion in ordering disclosure of the termination form.

As a final matter, we must address the trial court's contempt order. Requesting the trial court to enter a contempt order is a proper procedure to seek immediate appeal of a trial court's discovery order. *Buckman v. Columbus-Cabrini Medical Center*, 272 Ill. App. 3d 1060, 1067 (1995). In this case, we find that Lake Forest's decision not to produce the documents in question was made in good faith based upon sound legal arguments and was not contemptuous of the trial court's authority. See *Rounds v. Jackson Park Hospital & Medical Center*, 319 Ill. App. 3d 280, 289 (2001). We, therefore, vacate the order finding Lake Forest in contempt and imposing the daily fine.

For the foregoing reasons, we hold that the trial court properly concluded that nurse Frenkel's suspension form was not privileged under the Act; however, we hold that the trial court abused its discretion in compelling disclosure of nurse Frenkel's termination form because it lacked relevance to any issue in the case. Accordingly, we

vacate the trial court's contempt order and fine, and we remand the case for further proceedings.

Vacated and remanded.

GEIGER and BOWMAN, JJ., concur.