NOTICE

Decision filed 04/14/11. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-10-0075

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| R. JOE TRIMBLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Richland County. |
| | ) | |
| v. | ) | No. 08-MR-6 |
| | ) | |
| JIM GRAVES, JERRY GRAVES, and | ) | |
| TONY GRAVES, d/b/a CLOVER FARMS, | ) | Honorable |
| | ) | Christopher L. Weber, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Wexstten concurred in the judgment and opinion.

**O P I N I O N**

Plaintiff, R. Joe Trimble, filed in the circuit court of Richland County a petition to vacate an award of arbitration (710 ILCS 5/12 (West 2008)). The circuit court denied the petition and plaintiff appealed. On appeal, the issue is whether the arbitrators exceeded their powers. We reverse and remand with directions.

FACTS

On December 10, 1998, defendants, Jim Graves, Jerry Graves, and Tony Graves, doing business as Clover Farms, entered into an agreement to lease registered Jersey cows from plaintiff and John S. Trimble, doing business as Trimble Farms. The terms of the lease were for one year beginning on December 10, 1998, and ending on December 10, 1999.

On May 4, 2006, the parties entered into an "Arbitration Agreement" (Agreement). The Agreement stated, "The purpose of this arbitration is to decide by three competent arbitrators that will be discussed later in this agreement[] the amount of money due, if any,

1

from collectively the [defendants] to [plaintiff]." The Agreement provided that the parties were entering into binding arbitration to resolve issues which had arisen concerning the lease. The Agreement outlined the nature of the dispute:

"At the conclusion of the contract, [plaintiff] did not pick up the cows, but they remained in the possession of and under the responsibility of [defendants]. [Defendants] paid rent on said cows provided in the lease agreement until a time certain. [Plaintiff] ultimately picked up the remaining twelve (12) cows on or about September 23, 2005[,] and left four (4) cows due to the fact that they were not sound."

Plaintiff nominated Tim Butikofer as his arbitrator. Defendants nominated Fred Kuenstler as their arbitrator. The Agreement provided that the two selected arbitrators would select a third, neutral arbitrator. Arbitrator Kertz was selected later. The Agreement set prehearing rules for discovery, including the disclosure of documents and expert and lay witnesses.

Paragraph 6 of the Agreement provided as follows:

"6. That once the arbitration is completed, the arbitrators will at that time start the deliberations and will not separate until the matter is resolved to their satisfaction and a written document prepared, which can be handwritten, making the award as them [*sic*] deem best supported by the evidence. At that same time, the arbitrators will fix the costs of the arbitration and the costs shall be shared 50% by each side to this dispute. This paragraph can be modified only by the acceptance of all three arbitrators and the parties."

The Agreement established rules for the conduct of the arbitration hearing. The Agreement set forth an order of proof with plaintiff going first, followed by defendants and a rebuttal by plaintiff:

2

"12. Since this is an arbitration proceeding, the strict formal rules of evidence do not apply, but the arbitrators will have to determine whether the evidence is or is not credible. Either side can argue that the evidence is not credible.

13. That the attorneys who represent the parties will [be] the only persons who can speak on behalf of their client(s) and that would be Robert L. Douglas for [plaintiff] or a designee, but nobody other than one attorney per side can address the arbitrators. For [defendants], Mr. John A. Clark of the law firm of Croegaert, Clark & Hough, Ltd., or a designee."

The Agreement called for the arbitrators to select one among themselves to conduct the hearing to ensure proper decorum during the hearing. The Agreement also provided as follows:

"17. The arbitrators are by this agreement permitted to ask questions of any witness if they do not understand the answer or they want clarification for any purpose."

The Agreement set forth the following provisions for the conclusion of the arbitration:

"20. The arbitration will close and the arbitrator conducting the proceedings will inquire of the parties through their counsel if they have any additional evidence. The arbitrator will then request final arguments and the parties will have the absolute right to argue their final arguments and the procedure will be the same as is in this agreement that [plaintiff's] attorney will go first, followed by the attorney for [defendants], but it will be limited to rebuttal argument only and not a rehash of all the proceedings.

21. When the proofs are closed and after final argument, the arbitrators will retire to a place certain and commence their arbitration and any two arbitrators can make the decision for the award. In other words, the majority rule applies in favor

3

of or against [plaintiff], or in favor of or against [defendants]. Two of the three arbitrators will make the decision and that is all that is necessary by this Arbitration Agreement."

The arbitration hearing was held on December 19, 2007. The transcript of the hearing shows that plaintiff testified on his own behalf and presented testimony from three other witnesses. Jerry Graves, Jim Graves, and Tony Graves testified for the defense. The end of the transcript describes that after counsel for both sides presented closing arguments, the parties agreed to leave the conference room and arbitrator Kertz stated he would let the parties know when the arbitrators reached an agreement.

The arbitrators issued a written award of $7,676 for plaintiff, signed by arbitrators Kertz and Kuenstler. At the bottom of the document, arbitrator Butikofer wrote that he dissented and would, in the future, send in an opinion letter.

On January 15, 2008, arbitrator Butikofer issued an opinion letter. Butikofer laid out what he labeled the "simple facts of this situation" and offered what he called a proposed fair settlement of $158,675. Butikofer concluded by describing the conference of the arbitrators:

"Alois Kertz led the discussion and started out by saying that he felt that [plaintiff] was deserving of nothing because he had not enforced the contract. Tim Butikofer tried for well over two hours to convince Alois that the damages exceeded $100,000.00 and that even [defendants] were convinced that they owed something to [plaintiff]. It was not necessary for Fred Kuenstler to say much of anything because Alois Kertz took such control.

It seemed Alois Kertz's focus was to punish [plaintiff] for not being more proactive in recovering his leased property after the lease had been completed. It became very evident there was not going to be an agreement that all of us could support. Finally Alois Kertz made a motion that we would let [defendants] decide on

4

how much they owed and that would be the final amount of the settlement. Alois Kertz and Fred Kuenstler voted 'YES' and Tim Butikofer voted 'NO'. Motion passed.

[Defendants], [plaintiff], and their attorneys were called back into the meeting room. Alois Kertz asked Tony Graves how much he thought would be fair for [defendants] to pay [plaintiff]. Tony responded that he felt that he would be happy to pay $7,000.00 and it would be fair. Then Alois Kertz declared that the settlement amount would be set at $7,000.00 that [defendants] owed [plaintiff]. Case closed."

Plaintiff filed a petition to vacate the award pursuant to the Uniform Arbitration Act (710 ILCS 5/12 (West 2008)), in the circuit court of Richland County. After the petition was amended, defendants filed a motion to strike.

On January 26, 2010, the court entered an order denying the petition to vacate. The court found no evidence that the award was procured by corruption, fraud, or other undue influence. The court also found that there was no evident impartiality by the neutral arbitrator. The court found that plaintiff had stated a cause of action for the arbitrators exceeding their powers, but it also found that the arbitrators had not exceeded their authority. The court concluded as follows:

"H.   This Court finds that the arbitrators did not exceed the powers set forth in paragraph 6 of the [Agreement] when they voted to and did ask Defendants what they thought they owed Plaintiff. The arbitrators did not separate, did reach a majority decision, and reduced it to writing.

I.   This Court further finds that pursuant to paragraph 12 the parties had agreed to relax strict formal rules of evidence. This Court finds that this agreement permitted the arbitrators to re-open evidence in the manner they did when the majority voted to ask the Defendants what they thought they owed Plaintiff.

J.   This Court further finds that pursuant to paragraph 17 the parties had agreed

5

to allow the arbitrators to ask questions of any witness. This is exactly what the majority of the arbitrators voted to do when they determined to re-open the evidence and ask Defendants that [*sic*] they thought they owed Plaintiff."

Plaintiff timely appealed.

ANALYSIS

In an apparent attempt to reach a diplomatic result, the arbitrators inquired into what defendants thought would be a fair result. This type of inquiry is perfectly acceptable in mediation. The difficulty with the present case is that the parties had entered into an agreement to arbitrate, not to mediate. The contrast between arbitration and mediation has been described concisely:

"Mediation is a form of alternative dispute resolution 'in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement' about a dispute. Unlike arbitrators, mediators do not apply the law, resolve factual disputes, or adjudicate cases." Mary Patricia Benz, *The Mediation Option for Attorney Discipline Cases*, 98 Ill. B.J. 262, 262-63 (2010).

See 710 ILCS 5/1 *et seq.* (West 2008) (Uniform Arbitration Act); 710 ILCS 35/1 *et seq.* (West 2008) (Uniform Mediation Act). The arbitrators delegated their duties. This delegation exceeded their powers. See 710 ILCS 5/12(a)(3) (West 2008). The severity of their error is compounded by the fact that the arbitration was binding.

As an initial matter, the veracity of Butikofer's account of this aspect of the arbitration is not in dispute. Defendants did not present any alternative description to the circuit court, and in its order that court implicitly accepted Butikofer's statement. Similarly, the record on appeal contains nothing that differs from the description given by Butikofer.

Instead, this appeal revolves around whether the actions of the arbitrators exceeded the terms of the Agreement. The contract to arbitrate circumscribes the powers of the

6

arbitrators. *American Family Mutual Insurance Co. v. Stagg*, 393 Ill. App. 3d 619, 622, 912 N.E.2d 1283, 1286 (2009); see *In re American Arbitration Ass'n Arbitration*, 109 Ill. App. 2d 370, 374, 248 N.E.2d 756, 758 (1969). The circuit court found that the inquiry of the arbitrators fit under the relaxed rules for gathering evidence provided for in the Agreement. The flaw of the circuit court's ruling is twofold. First, the inquiry itself was not justified by the terms of the Agreement. Second, and of most importance, the analysis of the circuit court ignores the delegation of duty made by the arbitrators when they passed a motion to allow defendants to determine the amount of the award.

## I. The Impropriety of the Inquiry

The circuit court focused on the propriety of the question asked by the arbitrators. The circuit court based its decision on provisions in the Agreement allowing for the arbitrators to receive evidence in manners that would not be allowed at a trial. In particular, the circuit court noted that paragraphs 12 and 17 of the Agreement allowed for the arbitrators to deviate from the rules for litigation, and it found that these provisions permitted the arbitrators to ask defendants what they owed.

The Agreement did not, however, authorize an examination that was not aimed at gathering evidence. The circuit court pointed out that in paragraph 12 the parties "had agreed to relax strict formal rules of evidence." Similar language has been read to allow the admission of statements that would otherwise be barred as unreliable, such as hearsay. See *Montalbano v. Department of Children & Family Services*, 343 Ill. App. 3d 471, 478, 797 N.E.2d 1078, 1083 (2003) (discussing an administrative rule that called for " 'formal hearing in which the strict rules of evidence do not apply' " (quoting 89 Ill. Adm. Code §336.120(b)(1) (Conway Green CD-ROM April 2001)). Indeed, evidence that would not be admissible at a trial has supported arbitration awards. See *Christian Dior, Inc. v. Hart Schaffner & Marx*, 265 Ill. App. 3d 427, 437, 637 N.E.2d 546, 553 (1994) (the consideration

7

of hearsay evidence is consistent with the guidelines of the Uniform Arbitration Act).

Nonetheless, the plain language of paragraph 12 reiterated the principle that the arbitrators should base their decision on relevant evidence. See 6 C.J.S *Arbitration* §6 (2004). Paragraph 12 reads as follows:

> "12. Since this is an arbitration proceeding, the strict formal rules of evidence do not apply, but the arbitrators will have to determine whether the evidence is or is not credible. Either side can argue that the evidence is not credible."

See 6 C.J.S. *Arbitration* §6 (2004).

The question asked by the arbitrators fell outside the framework of paragraph 12. The question was not in the pursuit of relevant facts. Butikofer reported, "Alois Kertz asked Tony Graves how much he thought would be fair for [defendants] to pay [plaintiff]." Unlike evidence that might be barred by a strict and formal application of the rules, this question delved into the highly prejudicial and irrelevant topic of what defendants thought was fair. Evidence of settlement matters is barred because it is prejudicial and irrelevant. *Garcez v. Michel*, 282 Ill. App. 3d 346, 348-49, 668 N.E.2d 194, 196 (1996). The question of what Tony Graves thought was fair did not go to any fact of consequence. See *Green v. Lake Forest Hospital*, 335 Ill. App. 3d 134, 139, 781 N.E.2d 658, 663 (2002). The impropriety of the question does not derive from a strict and formal application of the rules. Instead, the question itself went beyond the realm of evidence and delved into the irrelevant.

Furthermore, the deviation by the arbitrators was not permissible under paragraph 17. The trial court properly noted that this paragraph allowed the arbitrators to ask questions of any witnesses, but the plain language of the paragraph also placed limitations on the types of questions that the arbitrators could ask. This paragraph allowed the arbitrators to ask questions under two circumstances. First, the arbitrators were permitted to ask questions if they did not understand the initial answer of the witness. The inquiry by the arbitrators was

8

no such followup. Second, the paragraph allowed the arbitrators to ask for clarification for any purpose. Clarification is a means of responding to doubt, confusion, or an incomplete answer. See *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 179, 795 N.E.2d 817, 846 (2003) (discussing the ability of juries as fact finders to seek clarification); *CFC Investment, L.L.C. v. McLean*, 387 Ill. App. 3d 520, 531-32, 900 N.E.2d 716, 726 (2008); (same); see also *Church v. State*, 164 Ill. 2d 153, 161, 646 N.E.2d 572, 577 (1995) (discussing the administrative clarification of a statute). Clarification was not the basis for the question asked by the arbitrators. The question did not respond to doubt or confusion regarding a matter that had previously been addressed in the arbitration but was a new avenue of inquiry not aimed at the facts contested at the hearing.

The inquiry into opinions regarding fairness was outside the powers of the arbitrators listed in the Agreement. More disquieting, the inquiry was made after two of the arbitrators had passed a motion to base the award on the answer.

## II. The Improper Motion

The circuit court characterized the proceedings as a simple reopening of the evidence. Butikofer stated as follows: "Finally Alois Kertz made a motion that we would let [defendants] decide on how much they owed and that would be the final amount of the settlement. Alois Kertz and Fred Kuenstler voted 'YES' and Tim Butikofer voted 'NO'. Motion passed." As the trial court likened the events to a reopening of the evidence, its analysis failed to address the fact that the arbitrators had voted to delegate their duty to adjudicate.

The motion violated the plain language of several provisions in the Agreement. The motion violated the stated purpose contained in the preamble for the arbitrators "to decide" the matter. In other words, the arbitration called for the matter to be arbitrated, not mediated. Although "the strict formal rules of evidence" were relaxed in paragraph 12, the same

9

paragraph stated that "the arbitrators will have to determine whether the evidence is or is not credible." Furthermore, the Agreement set forth an order for the proofs, calling for the presiding arbitrator to inquire if there would be any additional evidence before the closing arguments. Regardless of whether an opening of the proofs for more evidence was permissible, paragraph 21 reiterated that after the close of the proofs and final arguments the "arbitrators" would "make the decision for the award."

In particular, the motion violated paragraph 6 of the Agreement. That paragraph addresses situations where the arbitrators are deadlocked. The circuit court found that this paragraph did not prohibit the reopening of the evidence. The court ignored, however, other requirements of the provision. According to the paragraph, once the hearing was completed, the arbitrators were to engage in "deliberations" and make "the award as them [*sic*] deem best supported by the evidence." Any alternative resolution to a deadlock required the consent of all the arbitrators. By two arbitrators passing a motion to let defendants decide on how much they owed and allowing that to be the final amount to resolve the claim, the arbitrators did not deliberate, nor did they make an award they deemed best supported by the evidence, nor did they have the consent of all the arbitrators to use this alternative resolution to a deadlock.

The arbitrators exceeded their powers when they failed to adhere to the terms of the Agreement. Illinois favors arbitration. Nonetheless, arbitration is a contractual matter, and arbitrators exceed their powers if they do not proceed according to the terms of the agreement. See *In re American Arbitration Ass'n Arbitration*, 109 Ill. App. 2d 370, 374, 248 N.E.2d 756, 758 (1969).

The actions of the arbitrators in this case also violated a settled principle underlying arbitration. In contrast to mediation, the purpose of arbitration is not to reach a diplomatic solution. Arbitrators may not abdicate their duty to decide the merits of the matter before

10

them. *Lefkovitz v. Wagner*, 291 F. Supp. 2d 764, 772 (N.D. Ill. 2003), *aff'd on other grounds*, 395 F.3d 773 (7th Cir. 2005). Although arbitrators may seek the consultation of experts, arbitrators may not delegate their responsibility to determine the facts submitted for arbitration. See *Sunshine Mining Co. v. United Steelworkers of America*, 823 F.2d 1289 (9th Cir. 1987). This general principle is described in Corpus Juris Secundum as follows:

"It is contemplated that arbitrators named in an agreement will personally make decisions unless it is otherwise provided. As a general rule, arbitrators have no power to delegate to others the whole or any material portion of the authority confided to them or the judicial functions devolving on them under a submission. In addition, they must use their individual judgment in all decisions, and cannot delegate to one of themselves the power to decide any question, although they may each defer to the opinion of the others, basing their award on a compromise of opinion.

However, arbitrators are not precluded from honestly seeking the advice of outsiders to enable them to understand better the matters before them and to perform the duties confided to them, and to this end, they may properly consult experts and legal counsel. Nevertheless, it is essential to the proper exercise of the arbitrators' duty that, in acting on the advice so received, they should exercise their individual judgment and not accept as final the advice received unless it is in accordance with their own views." 6 C.J.S *Arbitration* §105 (2004).

Plaintiff also argues that the award was procured by undue means and that arbitrator Kertz did not perform in a neutral manner. The arbitrators undoubtedly went beyond the normal processes of arbitration, but because the award is being reversed for the arbitrators having exceeded their powers, this court need not address the other contentions raised by plaintiff. Plaintiff asks for relief in the form of the assignment of different arbitrators. The Uniform Arbitration Act states that in vacating an award on any grounds other than the

11

absence of an agreement to arbitrate, a court may order a rehearing before new arbitrators. 710 ILCS 5/12(c) (West 2008). The same section gives the option, in instances where the arbitrators improperly did not grant a continuance or otherwise exceeded their powers, to send the matter back to the same arbitrators. 710 ILCS 5/12(c) (West 2008). Prudence calls for the former option in this instance.

Accordingly, the order of the circuit court is hereby reversed, and the matter is remanded with directions that the court vacate the award of the arbitrators and direct the parties to engage in arbitration under the terms of the Agreement with new arbitrators.


Reversed; cause remanded with directions.

NO. 5-10-0075

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| R. JOE TRIMBLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Richland County. |
| | ) | |
| v. | ) | No. 08-MR-6 |
| | ) | |
| JIM GRAVES, JERRY GRAVES, and | ) | |
| TONY GRAVES, d/b/a CLOVER FARMS, | ) | Honorable |
| | ) | Christopher L. Weber, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**:     April 14, 2011

---

**Justices**:     Honorable Richard P. Goldenhersh, J.,

Honorable Thomas M. Welch, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorney**     Robert L. Douglas, Law Offices of Robert L. Douglas, Ltd., 103 Old Indian
**for**          Boundary Road, P.O. Drawer 8600, Robinson, IL 62454
**Appellant**

---

**Attorney**     John A. Clark, Clark, Hough & Racklin, Ltd., 305 East Main Street, Olney, IL
**for**          62450-2117
**Appellees**

---